UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

TRUSTEES OF THE LAUNDRY, DRY CLEANING
WORKERS AND ALLIED INDUSTRIES HEALTH
FUND, UNITE HERE!; and TRUSTEES OF THE
LAUNDRY, DRY CLEANING WORKERS AND
ALLIED INDUSTRIES RETIREMENT FUND,
UNITE HERE!

                     Plaintiffs,

     - against -

B&M LINEN CORP. D/B/A MIRON & SONS
LINEN SUPPLY A/K/A MIRON & SONS LINEN,
INC.,

                  Defendant.

-------------------------------------------------------------------x

**07-CV-6999 (DLC)**

**NOTICE OF MOTION
FOR
SUMMARY JUDGMENT**

COUNSEL:

      PLEASE TAKE NOTICE, that upon the annexed Declaration of Elizabeth M. Pilecki,

dated March 20, 2008, Declaration of Jeffrey Warbet, dated March 20, 2008, the exhibits

annexed thereto, Plaintiffs' Rule 56.1 Statement, the accompanying Memorandum of Law and

upon all prior pleadings and proceedings, the undersigned will move this Court before the Hon.

Denise L. Cote, United States District Judge, United States District Courthouse, located at 500

Pearl Street, New York, New York, for an Order for Summary Judgment in Plaintiffs' favor and

against Defendant.

      Grounds for this Motion are set forth fully in Plaintiffs' Memorandum of Law.

WHEREFORE, Plaintiffs respectfully request this Court enter an Order granting

Summary Judgment in Plaintiffs' favor and against Defendants.

Dated: New York, New York
      March 21, 2008

                                KENNEDY JENNIK & MURRAY, P.C.

By:                                    
                    Elizabeth M. Pilecki (EP-5805)
                    113 University Place, 7th Floor
                    New York, New York 10003
                    (212) 358-1500

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x

TRUSTEES OF THE LAUNDRY, DRY CLEANING
WORKERS AND ALLIED INDUSTRIES HEALTH
FUND, UNITE HERE!; and TRUSTEES OF THE
LAUNDRY, DRY CLEANING WORKERS AND
ALLIED INDUSTRIES RETIREMENT FUND,
UNITE HERE!                                                             07-CV-6999 (DLC)

                                        Plaintiffs,

      - against -

B&M LINEN CORP. D/B/A MIRON & SONS
LINEN SUPPLY A/K/A MIRON & SONS LINEN,
INC.,

                                   Defendant.

------------------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

KENNEDY, JENNIK & MURRAY, P.C.
Attorneys for Plaintiffs
113 University Place
New York, New York, 10003
(212) 358-1500

# TABLE OF CONTENTS

Page

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    1.    The Parties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    2.    The Collective Bargaining Agreements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    3.    The Trust Agreements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    4.    The Employer's Breach Of Its Obligation To Make Contributions
        Based On The Wages Of All Employees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    5.    The Employer Owes $79,049.96 For Contributions Owed Prior
        To March 19, 2004 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    6.    The Employer Owes $427,545.03 For The Period From
        March 19, 2004 to June 30, 2007 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8


ARGUMENT

    POINT I:  STANDARD FOR SUMMARY JUDGMENT . . . . . . . . . . . . . . . . . . . . . 10

    POINT II:  THIS COURT HAS SUBJECT MATTER JURISDICTION
    HEREIN . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    POINT III:  THIS COURT HAS PERSONAL JURISDICTION OVER
    RESPONDENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    POINT IV:  THE FUNDS ARE ENTITLED TO RECOVER UNPAID
    PAST DUE CONTRIBUTIONS TO THE FUNDS . . . . . . . . . . . . . . . . . . . . . . . . . 14

    A.    The Collective Bargaining Agreements Require A Percentage
        of the Gross Wages of All Bargaining Unit Employees Be
        Remitted to the Funds . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

    B.    The Employer has Repeatedly Excluded Employees From The
        Bargaining Unit and Has Failed and Refused to Remit

Contributions and Payroll Information to the Funds for These
Employees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

C.    The Employer's Reliance On An Alleged Oral Agreement
Must Fail . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

D.    The Employer Owes Contributions of $79,049.96 to The
Funds For The Period From March 20, 2003 through
March 19, 2004 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

E.    The Employer Owes Contributions of $427,545.03 to The
Funds For The Period From March 20, 2004 through
June 30, 2007 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

POINT V:  THE FUNDS ARE ENTITLED TO RECOVER
PRE-JUDGMENT INTEREST AND LIQUIDATED DAMAGES,
TOGETHER WITH COSTS AND ATTORNEY FEES . . . . . . . . . . . . . . . . . . . . . . . . 20

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

## TABLE OF AUTHORITIES

Cases                                                                                    Page

Abate v. Browning-Ferris Industries, 767 F.2d 52 (3d Cir.1985) ........................ 22

Anderson v. Liberty Lobby, Inc. , 477 U.S. 242 (1986) ............................... 11

Bakery & Confectionery Union and Indus. Int'l Pension Fund v.
    Ralph's Grocery Co., 118 F.3d 1018 (4th Cir.1997) ........................ 23, 24

Brick Masons Pension Trust v. Indus. Fence & Supply, Inc.,
    839 F.2d 1333 (9th Cir.1988) ............................................. 21

Celotex Corp. v. Catrett , 477 U.S. 317 (1986) ...................................... 11

Cement and Concrete Workers Dist. Council Welfare Fund, Pension Fund,
    35 F.3d 29 (2d Cir. 1994) ................................................ 25

Cent. Pa. Teamsters Health & Welfare Fund v. Scranton Bldg. Block Co.,
    882 F.Supp. 1542 (E.D. Pa 1995) ......................................... 23

Cent. States, SE & SW Areas Pension Fund v. Gerber Trucks Serv. Inc.,
    870 F.2d 1148 (7th Cir.1989) ............................................. 23

Cent. States SE & SW Areas Pension Fund v. Kraftco, Inc., 589 F.Supp.
    1061 (M.D. Tenn. 1984) ................................................. 22

Cent. States, SE & SW Areas Pension Fund v. Kroger Co., 226 F.3d 903
    (7th Cir .2000) ......................................................... 23

Combs v. King, 764 F.2d 818 (11th Cir.1985) ...................................... 31

D'Amico v. City of New York, 132 F.3d 145 (2d Cir. 1998) .......................... 11

La Barbera v. J.D. Collyer Equipment Corp. 337 F.3d 132 (C.A.2 N.Y. 2003) ............ 21

Lewis v. Seanor Coal Co., 382 F.2d 437 (3d Cir. 1967), cert. denied,
    390 U.S. 947 (1968) ................................................. 22, 23

Maxwell v. Lucky Construction Co., Inc., 710 F.2d 1395 (9th Cir. 1983) ................ 22

Mich. Laborers' Health Care Fund v. Grimaldi Concrete, Inc.,
    30 F.3d 692 (6th Cir.1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Mo-Kan Teamsters Pension Fund v. Creason, 716 F.2d 772
    (10th Cir. 1983), cert. denied, 104 S.Ct. 716 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . 22

Moglia v. Geoghegan, 403 F.2d 110 (2d Cir. 1968), cert. denied,
    394 U.S. 919 (1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

New York State Teamsters Conf. Pension & Retirement Fund v.
    United Parcel Service, Inc., 382 F.3d 272 (2d Cir. 2004) . . . . . . . . . . . . . . . . . 17, 18, 23

NYSA-ILA Medical & Clinical Services Fund v. Carco, Inc., 607
    F. Supp. 1217 (D.N.J. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Rodd v. Region Construction Co., 783 F. 2d 89 (7th Cir 1986) . . . . . . . . . . . . . . . . . . . . . . 14

Savoretti v. Hotel & Restaurant Emp. and Bartenders, 407 F. Supp
    1286 (S.D.N.Y. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

The Trustees of the UNITE HERE National Health Fund v. JY
    Apparels, Inc., ___ F.Supp.2d ___, 2008 WL 501362
    (S.D.N.Y. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Waggoner v. Dallaire, 649 F.2d 1362 (9th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Whelan v. Colgan, 602 F. 2nd 1060 (2d. Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

## Statutes

Employee Retirement Income Security Act of 1974:

    29 U.S.C. § 1002(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    29 U.S.C. § 1002(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    29 U.S.C. § 1002(21) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    29 U.S.C. § 1059(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
    29 U.S.C. § 1102 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
    29 U.S.C. § 1103 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
    29 U.S.C. § 1103(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
    29 U.S.C. § 1132(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 12, 13
    29 U.S.C. § 1132(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
    29 U.S.C. § 1132(e)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

29 U.S.C. § 1132(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
29 U.S.C. § 1132(g)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 25
29 U.S.C. § 1132(g)(2)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
29 U.S.C. § 1132(g)(2)(D) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
29 U.S.C. § 1145 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13, 18, 24, 25

Labor Management Relations Act:

29 U.S.C. § 185 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
29 U.S.C. § 185(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
29 U.S.C. § 186 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
29 U.S.C. § 186(c)(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 23
29 U.S.C. § 186(c)(5)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Federal Rules of Civil Procedure:

Rule 56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11


Other Authorities

10A Charles Alan Wright, Arthur R. Miller & Mary Kay Lane,
    Federal Practice & Procedure § 2725 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

## INTRODUCTION

Plaintiff Trustees of the Laundry, Dry Cleaning Workers and Allied Industries Health Fund, UNITE HERE! and Trustees of the Laundry, Dry Cleaning Workers and Allied Industries Retirement Fund, UNITE HERE! ("Trustees") are suing pursuant to the Employee Retirement Income Security Act of 1974 as amended and Section 301 of the Labor Management Relations Act to collect unpaid contributions that are due and owing to each of the Funds. The contributions are required by the collective bargaining agreement between the B&M Linen Corp. D/B/A Miron & Sons Linen Supply A/K/A Miron & Sons Linen, Inc. ("the Employer") and the Laundry, Dry Cleaning Workers and Allied Industries Joint Board, UNITE HERE! ("the Union"). The Employer and the Union are parties to a collective bargaining agreement which provides *inter alia* for contributions to be paid to the Funds based on the gross payroll of all bargaining unit employees. Specifically, the Employer improperly refuses to pay contributions to the Funds for four categories of employees: (1) part-time employees, (2) employees during the first three months of their employment in their so called "trial period," (3) employees performing bargaining unit work who the Employer deems an independent contractor, and (4) employees who the Employer contends reject membership in the Union in violation of the collective bargaining agreement. The Fund is entitled to collect from the Employer unpaid contributions due and owing as well as pre-judgment interest, liquidated damages, costs and attorneys fees.

## STATEMENT OF FACTS

1. **The Parties**

Plaintiff Laundry, Dry Cleaning Workers and Allied Industries Health Fund, UNITE HERE! ("Health Fund") and Plaintiff Laundry, Dry Cleaning Workers and Allied Industries

Retirement Fund, UNITE HERE! ("Retirement Fund", together "the Funds") are both an "employee welfare benefit plan" as defined in Section 3(1) of ERISA, 29 U.S.C. § 1002(1). The Funds maintain their principal administrative offices at 730 Broadway, New York, New York 10003 and the Amalgamated Life Insurance Co. ("ALICO") is the plan administrator for the Funds.

Plaintiff Trustees of both of the Funds are fiduciaries within the meaning of Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), as defined in Section 3(21) of ERISA, 29 U.S.C. § 1002(21). The same individuals sit as Trustees for both the Health Fund and the Retirement Fund. (Larancuent Dep. p. 11, L. 3-16.)

The Laundry, Dry Cleaning and Allied Workers Joint Board-UNITE HERE! ("the Union") is an unincorporated "labor organization" as defined in Section 3(4) of ERISA, 29 U.S.C. § 1002(4). Wilfredo Larancuent is and has been the Manager of the Laundry, Dry Cleaning and Allied Workers Joint Board, UNITE HERE! since 2000. (Larancuent Dep. p. 9 L. 4).

B&M Linen Corp. D/B/A Miron & Sons Linen Supply A/K/A Miron & Sons Linen, Inc. ("B&M" or "the Employer") is a New York corporation having its principal place of business at 220 Coster Street, Bronx, New York 10474. (Miron Dep. p. 10, L. 12-13.) Prior to its present principal place of business, B&M was located at 310 Walton Avenue, Bronx, New York, 10454. (Miron Dep. p. 11, L. 23-24.) Miron Markus ("Miron") is and has been the President of Defendant B&M Linen Corp. D/B/A Miron & Sons Linen Supply A/K/A Miron & Sons Linen, Inc. for the past twenty years. (Miron Dep. p. 11, L. 7-9.)

2.    <u>The Collective Bargaining Agreements</u>

The Union represents employees at B&M Linen Corp. D/B/A Miron & Sons Linen

Supply A/K/A Miron & Sons Linen, Inc.  The bargaining unit includes "all of the employees of

the employer except guards and supervisors as defined by the National Labor Relations Act."

(Pilecki Decl. ¶ 11, Exh. F at p. 4, Art. I, Exh. G at p. 4, Art. I.)

The Union and the Employer have been parties to a series of collective bargaining

agreements that cover all relevant periods herein.  (Pilecki Decl. Exhs. F, G, H, I.)

The Union and the Employer were parties to a collective bargaining agreement effective

from November 28, 2000 through November 27, 2003 ("the November 2000 CBA") (Pilecki

Decl.  Exh. F.),  a collective bargaining agreement effective from November 28, 2003 through

November 27, 2006 ("the November 2003 CBA") (Pilecki Decl. Exh. G.) which was  modified

by a February 7, 2004 stipulation between the Union and the Employer  (Pilecki Decl. Exh. F.)

Subsequently, the Union and the Employer signed a Stipulation dated November 27, 2006

("November 27, 2006 Stipulation") (Pilecki Decl. Exh. I.) that further modified and extended the

November 2003 CBA to November 27, 2009. (Pilecki Decl. Exhs. G, I.)

The collective bargaining agreements and related stipulations required contributions to

the Funds equal to a stated percentage of the gross payroll of all employees in the bargaining unit.

The contribution rates from March 19, 2003 through the present for the Health Fund are as

follows:

|  |  |
|---|---|
| January 1, 2001 | 10% |
| January 1, 2002 | 11% |
| (Pilecki Decl., Exh. F, p. 60.) | |
| November 28, 2003 | 11% |

November 28, 2004          11.5%
November 28, 2005          12%
(Pilecki Decl., Exh. F. at para. 4(a), Exh. G, pp. 48-49.)

November 27, 2006          12.9%
November 26, 2007          13.6%
December 1, 2008           14.3%
(Pilecki Decl., Exh. I at para. 4(a), Exh. G.)

The contribution rates for the Retirement Fund are as follows:

November 28, 2003          0.8%
(Pilecki Decl., Exh. F at para 4(b), Exh. G, p. 53-54)

November 27, 2006          1.1%
November 26, 2007          1.4%
December 1, 2008           1.6%
(Pilecki Decl. Exh. G. at para. 4(b), Exh. G.)

The contribution rate for the Scholarship and Legal Services Fund are as follows:

November 28, 2003          0.2%
(Pilecki Decl., Exh. F at para. 4(c), Exh. G.)

November 27, 2006          0.4%
(Pilecki Decl. Exh. G. at para. 4(b), Exh. G.)

3.       **The Trust Agreements**

The collective bargaining agreements provide that the Employer is deemed to have

accepted and become bound by the Agreement and Declaration of Trust for the Insurance Fund

and the Agreement and Declaration of Trust for the Retirement Fund ("Trust Agreements") by

contributing to or having an obligation to contribute to the Funds.  (Warbet Decl. Exh. D, Article

I, Section 3, Exh. E, Article I, Section 3; Pilecki Decl. Exh. F, pp. 59-60, Exh. G, pp. 48-49.)

The Employer's obligations under the Trust Agreements are to make contributions to the Funds

when due, to furnish to the Funds employee information reasonably required in connection with

-4-

the administration of the Funds, and to make available to the Funds or its designees payroll

records for examination and copying.  (Warbet Decl. Exh. D, Article IV, Sections 1-3, Exh. E.,

Article IV, Sections 1-3.)

The Trust agreement provides that an employer who defaults in its obligation to the

Funds shall be liable to the Funds for all "costs incurred by the [Funds] in collecting such

delinquent amounts, including . . . interest, auditor's fees, liquidated damages, attorney's fees, and

costs . . . duirng the collection of the Employer's delinquent Contributions or other payments."

(Warbet Decl. Exh. D, Article V, Sec. 1, Exh. E, Article V, Section 1.)   The interest rate applied

for the collection of delinquent contributions is one and one-half percent per month or any part

thereof and liquidated damages are the greater of interest on the delinquent contributions or

twenty percent of the delinquent contributions.  (Warbet Decl. Exh. D, Article V, Sec. 1, Exh. E,

Article V, Section 1.)

### 4.    The Employer's Breach Of Its Obligation To Make Contributions Based On The Wages Of All Employees

The Employer is obligated to pay contributions to the Fund based on gross wages of all

employees in the bargaining unit.  (Pilecki Decl. Exh. F, p., 60 para. 1-3, Exh. G, p. 48-49, para.

1-3, Warbet Decl. Exh. D, Art. IV(1),  Exh. E, Art. IV(1).)  The definition of the bargaining unit

does not exclude part-time employees, employees who are working for the Employer during their

"trial period," employees deemed "independent" by the Employer, or employees the Employer

claims do not want to be members of the Union.  (Pilecki Decl. Exh. F, Art. 1, Exh. G, Art. I)

Miron cannot point to any written agreement or recall any specific conversation where he

and the Union or a Union officer agreed that the Employer was not required to pay contributions

to the Funds for the gross payroll of part-time employees or employees during their trial period. (Miron Dep. p. 32, L. 20 - p. 33, L. 4, p. 34, L. 22 - p. 37, L. 15, p. 39, L. 7-13, p. 47, L. 8-15, p . 48, L. 6-15, p. 64, L. 17 - p. 65, L. 25, p. 68, L. 17 - p. 69, L. 3, p. 77, L. 3-10.)

Despite the fact that Miron agrees that "every job in the shop is a Union job." (Miron Dep. p. 158, L. 9-11) the Employer did not report wages to the funds for the majority of the employees in the relevant time periods.

The Employer does not report the wages to the funds for employees in the bargaining unit during their first three months of employment and the Employer does not pay contributions to the Funds based on a percentage of their gross wages. (Miron Dep. p. 63, L. 15-24, p. 83, L. 10-17, p. 154, L. 24- 156, L. 3.)

The Employer does not report the wages to the Funds for part time employees in the bargaining unit and does not pay contributions to the Funds based on a percentage of their gross wages. (Miron Dep. p. 63, L. 25 - p. 64, L. 2, 68, L. 2-16, p. 83, L. 6-9, p. 152, L. 6-24.)

The Employer does not report wages to the Funds for employees who claim that they do not want to join the Union and does not pay contributions to the Funds based on a percentage of their gross wages. (Miron Dep. p. 156, L. 4-16, p. 157, L. 20-23, p. 157, L. 24 - p. 158, L. 5, p. 161, L. 17 - p. 162, L. 7, p. 164, L. 15 - p. 167, L. 2).

The Employer produced during discovery Quarterly Combined Withholding, Wage Reporting and Unemployment Insurance Returns, Form NYS-45-MN ("NYS-45") for the tax years 2005 and 2006, and for the first and second quarters of 2007. Each of the four NYS-45s is dated October 17, 2007. Pilecki Decl. Exhs.K-N (Miron Dep. p. 103, L. 17-19, p.104. L. 24 - p. 105, L. 6.) The NYS-45s contain the names and wages reported to the State of New York for

each of the Employer's employees.  In addition, at the time that the NYS-45s were produced to the Plaintiffs in this matter they contained hand written notations regarding each employee's status (part-time, supervisor, independent, worked one month, etc.)  Pilecki Decl. Exhs.K-N (Miron Dep. p. 107, L. 4-10.)

Based on the employees listed in the NYS-45s, Miron Markus created and produced a document that contained information regarding the hire and termination dates for certain employees as well as notations as to the employee's position with the Employer such as "union," "supervisor," and "plant manager."  (Pilecki Decl. Exh.Z, Miron Dep. p. 147, L. 20-p. 148, L. 3.)

**5.    The Employer Owes $79,049.96 For Contributions Owed Prior To March 19, 2004**

In an earlier dispute regarding unpaid contributions to the Funds, the Funds and the Employer executed an Agreement dated March 20, 2003 ("March 20, 2003 Settlement") which settled the Funds' claim that the Employer owed a total of $226,325.70 to the Funds for unpaid contributions and interest for the period from December 27, 1996 through March 19, 2003. (Pilecki Decl. Exh.O.)  The March 20, 2003 Settlement provided that the Employer agreed to pay an initial $40,000.00 and then monthly installments of $5,000.00 until the delinquent contributions and monies owed to the Funds were paid in full and to at least a minimum of $100,000 . (Pilecki Decl. Exh.O.)   The final amount of contributions to be paid was to be determined by an audit.  *Id.*

After the March 20, 2003 Agreement was signed, the Funds performed an audit of the Employer's books for the period from January 1, 1997 through March 19, 2004 and determined that the Employer owed the funds delinquent contributions for that time period.  (Pilecki Decl.

-7-

Exh.P.)[1]  Contributions due and unpaid pursuant to the audit for the period from March 20, 2003

through March 19, 2004 total $79,049.96.  (Warbet Decl. Exh. S.)

**6.    <u>The Employer Owes $427,545.03 For The Period From March 19, 2004 to June 30,</u>**
**<u>2007</u>**

In 2007 the Union acquired an employee list that contains employee signatures and is

entitled "B&M Linen Corp Employee Contact List" dated February 19, 2007 and for the pay

period ending February 18, 2007.  (Pilecki Decl. Exh.T , Miron Dep. p. 138, L. 6-13.)   Miron

uses such printed lists for employees, including supervisors, to sign when they pick up their

weekly pay check.  (Miron Dep. p. 138, L. 25 - p. 141, L. 7, p. 142, L. 13 - 16).  The Funds

received the February 2007 employee list from the Union in July 2007. (Pilecki Decl. Exh. U.)

The list contained the names of 115 employees.  (Pilecki Decl. Exh.T , Miron Dep. p. 138, L. 14-

24.)  The Employer reported to the Funds only 38 employees on payroll for the pay period ending

February 18, 2007.  (Pilecki Decl. Exh. J.)

Based on the number of employees contained in the February 19, 2007 employee list the

Funds sent a letter on August 9, 2007 with an invoice to the Employer dated August 6, 2007

charging unpaid estimated contributions in the amount of $637,638.23 for the wages not reported

---

[1]  The Employer objected to the Funds calculations that included employees who Markus
deemed supervisors, independent workers, part timers, employees working during their trial
periods or employees working for a short time, 1.5 months or less.  (Warbet Decl. Exh.Q.)  In
response, the Funds sent a Revised Audit Letter with supporting exhibits dated July 25, 2005 to
the Employer charging $199,268.31 for unpaid contributions for the period from January 1, 2001
through March 19, 2004, specifically requiring contributions for the employees that Miron had
labeled temporary, part time, trial period etc.  (Pilecki Decl. Exh.R.)  The supporting documents
to the July 25, 2005 letter the Funds noted Miron Markus's objections to the inclusion of certain
employees while continuing to charge the Employer for contributions on their behalf.  (Pilecki
Decl. Exh. R)

to the Funds for the period from March 19, 2004 through and including June 30, 2007. (Pilecki Decl. Exh. U.)

The Funds initially sought to audit the Employer's books but concluded that the Employer would frustrate a meaningful audit by delay.[2]

Since the Employer had produced NYS-45 quarterly reports during discovery in this matter, the Funds revised the calculations for unpaid contributions and interest due from the Employer for the period from March 19, 2004 through June 30, 2007. (Pilecki Decl. Exh. AA.) The revised calculations included wages for all employees listed on the the the NYS-45's produced by the Employer who were not "supervisors", Miron's chart containing hire and termination dates for certain employees, and the information from the Employer Receipts Report for the years 2005 and 2006. (Pilecki Decl. Exhs. K, L, M, N, Z, BB, CC.)

These records and the testimony of Miron show that the Employer did not report wages to the Funds for part-time employees, employees during their first three months of employment, "independent" employees and employees who did not want to be in the Union. (Miron Dep. p. 63

_____

[2]       Both Trust Agreements contain Article IV "Obligations of the Employer" which provides that an Employer is obligated to provide information regarding participating employees and their wages to the Trustees or the Fund Administrator, and make available for inspection and copying the Employer's payroll records. (Warbet Decl. Exhs. D and E.) The collective bargaining agreements contain the same provision. (Pilecki Decl. Exh. F p. 61, Exh. G p. 50.)

By letter dated October 1, 2007 the Funds sought to commence an audit on any weekday after October 8, 2007 and no later than October 19, 2007. The Employer had until October 5, 2007 at 5:00 p.m. to schedule an audit. (Pilecki Decl. Exh.V.) The Funds and the Employer agreed to commence the audit on Tuesday, October 16, 2007 at the Employer's premises. (Pilecki Decl. Exh.W.) The Employer did not have all documents available and the audit was postponed. The Funds and the Employer agreed to continue the audit on October 23, 2007 at 9:00 a.m. (Pilecki Decl. Exh.X.) The Funds requested that Miron not contact the auditor directly regarding the format of the audit and requested that Miron not attempt to negotiate the terms of the audit with the Funds' staff. (Pilecki Decl. Exh.Y.)

L. 15 – p. 64, L. 2, p. 68 L. 2-16, p. 83, L. 6-17, p. 152 L. 6-24, p. 154 L. 24 – p. 156 L. 4-16, p.

157 L. 20 – p. 158 L. 5, p. 161 L. 17 – p. 162 L. 7, p. 164 L. 15 – p. 167 L. 2.)

The Funds' revised calculations for the period from March 19, 2004 through June 30,

2007 included all employees listed on the NYS-45's who are part-time, working their trial period,

or "independent." (Pilecki Decl. Exh. AAA, Vonleh Dep. p. 30 L. 16 – p. 32 L. 21.) The Funds'

revised calculations also took into account the contributions already paid by the Employer to the

Funds and detailed in the Funds' Earnings Receipt Reports for 2005 and 2006. (Pilecki Decl.

Exhs. AA, BB and CC.) Because the Employer did not provide NYS-45s or other payroll

information to the Funds for the year 2004, the unpaid contributions for 2004 are estimated based

on the employee compliment reflected in the 2005 NYS-45s. (Pilecki Decl. Exh. AA, Vonleh

Dep. p. 25, L. 17-25.)

The Funds revised total for unpaid contributions and interest due for the period from

March 19, 2004 through June 30, 2007 is $427,545.03. (Pilecki Decl. Exh. AA.) The revised

calculations do not include any employee that is labeled a "supervisor" on the NYS-45s. (Pilecki

Decl. Exh. AA, Vonleh Dep. p. 30 L. 19 – p. 31 L. 5.)


## ARGUMENT

### POINT I

### STANDARD FOR SUMMARY JUDGMENT

The Federal Rules of Civil Procedure provide that summary "judgment sought shall be

rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on

file, together with the affidavits, if any, show that there is no genuine issue as to any material fact

-10-

and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998). An issue is "genuine" only if

there is sufficient evidence from which a reasonable trier of fact could find for the non-moving

party. See Anderson v. Liberty Lobby, Inc. , 477 U.S. 242, 249 (1986). A fact is "material" if it

might affect the outcome of the suit under governing law. Id. at 248. "Factual disputes that are

irrelevant or unnecessary will not be counted." Id. (citing 10A Charles Alan Wright, Arthur R.

Miller & Mary Kay Lane, Federal Practice & Procedure § 2725, at 93-95 (1983)).

In accordance with this standard the Funds have specifically identified the basis for its

motion and listed those portions of the record that demonstrate the absence of a material fact in

genuine dispute in its Rule 56.1 Statement. See Celotex Corp. v. Catrett , 477 U.S. 317, 323

(1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the

movant's initial Celotex burden can be met simply by "pointing out to the district court that there

is an absence of evidence to support the non-moving party's case." Id. at 325. "After the moving

party has met its initial burden, summary judgment is appropriate if the non-moving party fails to

rebut by making a factual showing sufficient to establish an element essential to that party's case,

and on which that party will bear the burden of proof at trial." Id. at 323. It is not the role of the

Court to weigh the evidence, only to determine whether there are any triable issues.


## POINT II

## THIS COURT HAS SUBJECT MATTER JURISDICTION HEREIN

The Trustees of the Funds are fiduciaries who have standing to bring this lawsuit under

the Employee Retirement Income Security Act of 1974, as amended (hereinafter, "ERISA") to

-11-

redress violations of the terms of the plan.  29 U.S.C. 1132(a)(3).  Section 515 of ERISA

provides that

> [e]very employer who is obligated to make contributions to a
> multiemployer plan under the terms of the plan or under the terms
> of a collectively bargained agreement shall, to the extent not
> inconsistent with law, make such contributions in accordance with
> the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145.

The evidence is clear that the Employer has failed to make contributions to the Funds

required by a Collective Bargaining Agreement.  The Collective Bargaining Agreements in effect

for the relevant period require that the employer make contributions to the Funds for a specified

percentage of the "total gross earnings, prior to payroll deductions, payable by the Employer to

the employees of the Employer for the preceding pay period.  (Pilecki Decl. Exhs. F, G, H, I.)

The "employees of the Employer" include all employees in the collective bargaining unit,

including employees during their trial period.  (Pilecki Decl. Exh. F, Art. I, Exh. G, Art. I.)

Miron has repeatedly testified that he excludes at least five categories of employees when

calculating contributions to the Funds:  part-time employees, employees who work during their

"trial period," employees deemed independent contractors by the employer, employees who

reject union membership and supervisors.  Only supervisors are properly excluded.  (Pilecki

Decl. Exh. F at p. 4, Art. I, Exh. G at p. 4, Art. I.)  Nothing in the Collective Bargaining

Agreements or the Trust Agreements permit such exclusions.  (Pilecki Decl. ¶ 34 and Exhs. F, G;

Warbet Decl. Exhs. D, E.)

-12-

The Funds' Trustees, as fiduciaries of the Funds, are qualified to bring suit against the Employer to recover unpaid contributions due to the Funds.  Section 502(a)(3), (b)(1), 29 U.S.C. 1132(a)(3), (b)(1), states that:

> A civil action may be brought by a participant, beneficiary or fiduciary to redress such violations (of title I of ERISA, 2-608, 29 USC 1001-1168).

As a fiduciary of the Funds, Plaintiff  has standing to bring this proceeding, which seeks redress of Respondent's violation of Section 515.  In addition, this court has jurisdiction to hear this proceeding under section 502(f), which provides:

> The district courts of the United States shall have jurisdiction, without regard to the amount in controversy or citizenship of the parties, to grant the relief provided for in subsection (a) of this section in any action.

As shown above, this is an action for relief under subsection (a) of 502.

The Plaintiff also brings this suit pursuant to Section 301(a) of the Labor Management Relations Act of 1947, 29 U.S.C. Section 185(a).  It is well established that agreements requiring employee benefit contributions are contracts within the meaning of Section 301(a), <u>Savoretti v. Hotel & Restaurant Emp. and Bartenders</u>, 407 F. Supp 1286 (S.D.N.Y. 1979), and that trustees of an employee benefit fund may maintain an action under that section. <u>Whelan v. Colgan</u>, 602 F. 2nd 1060 (2d. Cir. 1979).


## POINT III

## THIS COURT HAS PERSONAL JURISDICTION OVER RESPONDENT

Section 502(e)(2) of ERISA, 29 USC 1132(e)(2) provides:

> Where an action under this subchapter is brought in a district court
> of the United States, it may be brought in the district where the
> plan is administered, where the breach took place, or where
> defendant resides or may be found, and process may be served in
> any other district where defendant resides or may be found.

The Employer's sole place of business is in the Bronx, New York, within the jurisdiction of the Southern District of New York.  (Pilecki Decl. ¶¶ 10 and 11.)  Thus, venue is proper in this court.

The last clause of section 502(e)(2) authorizes nation wide service of process on a defendant, regardless of the district in which the action is brought. See Rodd v. Region Construction Co., 783 F. 2d 89 (7th cir 1986). As Respondent was served with process within the district of New York this court has obtained personal jurisdiction.  This court has personal jurisdiction over the Respondent.


## POINT IV

### THE FUNDS ARE ENTITLED TO RECOVER UNPAID PAST DUE CONTRIBUTIONS TO THE FUNDS

A.    **The Collective Bargaining Agreements Require A Percentage of the Gross Wages of All Bargaining Unit Employees Be Remitted to the Funds.**

Defendant Employer is party to a consecutive series of collective bargaining agreements and stipulations with the Laundry Workers Union.  Pursuant to these agreements the Employer is required to pay contributions and submit remittance reports and other payroll information to the Funds.

The collective bargaining agreements provide that the bargaining unit "includes all of the employees of the Employer except guards and supervisors as defined by the National Labor

Relations Act." (Pilecki Decl. ¶ 13, Exhs. G and G.) The Supplemental Agreement to both the November 2000 CBA and the November 2003 CBA contain clear and unambiguous language identifying the employees whose wages the employer must include when calculating and making contributions to the Funds. Exhibit A, paragraph 1 of the Supplemental Agreement states that "[t]he term "employees of the Employer" as used in the Supplemental Agreement means all of the employees of the Employer within the collective Bargaining unit fixed by the Collective Bargaining Agreement, including employees during their trial period."[3] (Pilecki Decl. Exh. F p. 60, ¶ 1, Exh. G p. 48, ¶ 1.)

The Supplemental Agreement to both the November 2000 CBA and the November 2003 CBA also specifies the method used to calculate the Employer's contributions due to the Funds. Paragraph 3 of the Supplemental Agreement to tthe November 2003 CBA requires that

> The Employer shall pay to the Trustees . . . sums of money determined as follows:
>
> Effective November 28, 2003, the Employer shall pay to the Trustees of the Laundry, Dry-Cleaning Workers and Allied Industries Health Fund 11% of the Total gross earnings, prior to payroll deductions, payable by the Employer to the employees of the Employer for the preceding pay period.

(Pilecki Decl. Exh. F p. 60, ¶ 3, Exh. G p. 49, ¶ 3.)[4]

It is clear from the language is Article I of both CBAs, and the language of the Supplemental Agreement to both collective bargaining agreements that the bargaining unit does not exclude any employees performing bargaining unit work except for supervisors and guards.

------------------------------------------------------------

[3] The Employer defines the "trial period" as the first ninety days of employment. (Miron Dep. p. 41, L. 17-20.)

[4] The provision also provides for increases to the percentage used in both 2004 and 2005.

The collective bargaining agreements and stipulations amending the collective bargaining agreements set forth the rates of contribution along with the method for calculating the total amount of contributions due to the Funds.  The contribution rates from March 19, 2003 through the present for the Health Fund are as follows:  effective January 1, 2002 - 11% (Pilecki Decl., Exh. F, p. 60), November 28, 2003 - 11%, November 28, 2004 - 11.5%, November 28, 2005 - 12%, (Pilecki Decl., Exh. F. at para. 4(a), Exh. G, para. 48-49), November 27, 2006 - 12.9%, November 26, 2007 - 13.6%, December 1, 2008 - 14.3%, (Pilecki Decl., Exh. I at para. 4(a), Exh. G at p. 48-49.)

The contribution rates for the Retirement Fund are as follows:  November 28, 2003 - 0.8% (Pilecki Decl., Exh. F at para 4(b), Exh. G, p. 53-54), November 27, 2006 - 1.1%, November 26, 2007 - 1.4%, December 1, 2008 - 1.6% (Pilecki Decl. Exh. G. at para. 4(b), Exh. G at p. 53-54.)

**B.      The Employer has Repeatedly Excluded Employees From The Bargaining Unit and Has Failed and Refused to Remit Contributions and Payroll Information to the Funds for These Employees.**

The evidence is clear that the Employer excludes certain categories of employees from the payroll information that has been reported to the Funds, and does not remit contributions based on the wages earned by these employees.

The Employer produced NYS-45s during discovery which at the time they were produced contained hand writing which indicated whether certain employees were part-time, independent, a supervisor, or trial period employees.[5]  (Pilecki Decl. ¶ 39, Exhs. K, L, M, N.)  Supervisors are

---

[5]  The notation for newly hired employees who are working during a trial period on the NYS-45s include "worked 1 month," "worked 1 week," "worked 2 weeks," "worked 3 weeks," etc.

the only category that is appropriately excluded for contributions to the Funds.  It is clear that the Employer did not report wages to the Funds for employees in these categories, nor did it forward the required contributions.

For example, the NYS-45s for the first quarter of 2007 report 115 employees for which contributions should be paid.[6]  Pilecki Decl. Exh. M.  The employee sign in sheet dated February 19, 2007 contains 115 employees.  The Employer reported to the Funds the wages of only 38 employees for this period.  Pilecki Decl. Exh. J.  The numbers speak for themselves - the Employer failed to report wage information to the Funds and failed to pay contributions based on the wages of two-thirds of the bargaining unit.  The Employer's actions are a violation of the collective bargaining agreements, and ERISA.

**C.    The Employer's Reliance On An Alleged Oral Agreement Must Fail.**

The Employer offers no valid explanation as to why contributions based on the gross wages of part-time, independent, and trial period employees are not remitted to the Funds.  The Employer's sole argument is that Miron reached an oral agreement with Wilfredo Larancuent, the Manager of the Union, that the Employer would not be required to remit contributions based on the wages of part-time and trial period employees.  (See Warbet Decl. Exh. Q.)  The Employer's reliance on this alleged oral agreement must fail as a matter of law.

Oral or unwritten agreements that limit a participating employer's contributions to a plan cannot supersede otherwise valid rules and regulations promulgated by the plan and violate ERISA Section 515.  New York State Teamsters Conf. Pension & Retirement Fund v. United

---

[6]  This calculation does not include employees labeled "supervisor" and does not include manager or other members of the owners family for which wage information was excluded.

-17-

Parcel Service, Inc., 382 F.3d 272 (2d Cir. 2004).  The court noted that the plan administrators must be able to read the relevant provisions of the collective bargaining agreement and not need to interview the negotiators in order to understand the provision's meaning.  Id. at 280.

Miron alleges that he and Larancuent made an oral agreement to exclude the wages of certain classes of employees from the Employer's contributions to the Funds, but Miron cannot recall when this agreement was made.  (Pilecki Decl. ¶ 34.)  In addition, Miron cannot point to any portion of the written collective bargaining agreements or stipulations between the Employer and the Union allegedly reached at or after the time this oral agreement was reached to support his position.  (Pilecki Decl. ¶ 34.)

Such vague assertions can only lead to the conclusion that no oral agreement exists. However, even if an oral agreement was reached between the Employer and the Union such an agreement would be null and void as a violation of section 515 of ERISA, 29 U.S.C. § 1145.

As for employees defined by the Employer as "independent" and unwilling to join the Union, the Employer offers no valid explanation under the contract or ERISA as to why wages for these employees were excluded from the calculations for contributions.

**D.    The Employer Owes Contributions of $79,049.96 to The Funds For The Period From March 20, 2003 through March 19, 2004.**

The March 20, 2003 Settlement resolved a dispute over unremitted contributions through March 19, 2003.  The March 20, 2003 Settlement contained a provision that required any dispute to be resolved through arbitration.  The Funds reduced the revised audit total to recognize any contributions that the Employer made to discharge its obligations through March 19, 2004 and

determined that the revised audit amount due for the period from March 20, 2003 through March 19, 2004 totaled $79,049.96.  (Warbet Decl. ¶¶ 6 and 7, Exh. S.)

The Funds' revised audit properly calculated the unremitted contributions due to the Funds from the Employer.  There is no contractual or legal basis for excluding the wages from the three employee groups and judgment must be entered in favor of the Funds.

**E.    The Employer Owes Contributions of $427,545.03 to The Funds For The Period From March 20, 2004 through June 30, 2007.**

The Funds submitted an audit demand to the Employer in September 2006.  No audit was performed.  In 2007 the Union obtained a employee list containing employee signatures dated February 19, 2007 and sent the list to the Funds in July 2007.  The employee list contained 115 employee names and signature.  The Employer had reported only 38 employees for the same period of time.  (Pilecki Decl. ¶¶ 56 and 57.)

Shortly thereafter the Funds sent an August 6, 2007 bill to the Employer for $637,638.23 for the unremitted contributions for the additional employees for the period from the date of the last audit, March 19, 2004 through June 30, 2007.  (Pilecki Decl. Exh. U, Vonleh Dep. p. 22, L. 14-19.)  The August 6th bill was a projection based on the number of employees.  (Vonleh Dep. p. 22, L. 17-19.)

Based on documents produced by the Employer during discovery the Funds recalculated the unremitted contributions owed to the Funds and the new figure of $427,545.03 was sent to the Employer's counsel in February 2008.  The new calculation was based on the NYS-45's for 2005, 2006 and the first two quarters of 2007.  (Pilecki Decl. ¶ 66, Exhs. K, L, M, N, Z, BB, CC.)  The Funds have never received any documentation to confirm employee wages for the year

-19-

2004. (Vonleh Dep. p. 25, L. 7-9, p. 26, L. 16-22, p. 27, L. 10-11)  To calculate the 2004

estimated contributions, the Funds used the information for 2005 provided by the Employer.

(Vonleh Dep. p. 25, L 18-25, p. 28, L. 5-7, p. 28, L. 23.)  The Funds accepted the wage figures in

the NYS-45s as accurate.  (Vonleh Dep. p. p. 30, l. 3-15.)  The Funds did not include wages for

employee listed as supervisors in the February 2008 revised calculation.  (Vonleh Dep. p. 30, L.

21- p. 31, L. 5.)

     Despite efforts by the Funds counsel to audit the Employer's books and records in for the

period from March 19, 2004 through June 30, 2007 no audit occurred.  (Pilecki Decl. ¶ 64.)

Even though an audit did not occur the Employer provided accurate payroll information in the

form of the NYS-45s.  The Funds' calculations based on the wages of employees listed on the

NYS-45s (excepting supervisors and company management) are based on the Employer's

reported wages and therefore the Employer cannot make a valid challenge to the Funds'

calculation for the years 2005, 2006 and the first two quarters of 2007.


## POINT V

### THE FUNDS ARE ENTITLED TO RECOVER PRE-JUDGMENT INTEREST AND LIQUIDATED DAMAGES, TOGETHER WITH COSTS AND ATTORNEY FEES

     The Trustees of the Laundry Funds have a fiduciary obligation to maintain and preserve

the assets of the Fund under 29 U.S.C. §§ 1102-1103, and are vested with the "exclusive

authority and discretion to manage and control the assets of the plan," 29 U.S.C. § 1103(a).  The

Trustees have shown that the Employer has failed to contribute to the Funds for a substantial

amount of his workforce.

It is not a defense for an employer to argue that its records are unable to establish the precise amount of its delinquency to an ERISA Fund. In La Barbera v. J.D. Collyer Equipment Corp. 337 F.3d 132, 137 C.A.2 (N.Y.), 2003, the Court held that ERISA requires employers to keep records of their employees' hours in order to permit the calculation of benefits due. See 29 U.S.C. § 1059(a)(1) ("every employer shall ... maintain records with respect to each of his employees sufficient to determine the benefits due or which may become due to such employees"); Combs v. King, 764 F.2d 818, 822-25 (11th Cir.1985). Since the collective bargaining agreements provide the framework for calculating the contributions owed by the Employer, it is appropriate to invoke the Second Circuit's observation in LaBarbara supra that "some courts have held that once trustees to an ERISA fund produce evidence raising genuine questions about the accuracy of a particular employer's records, the burden shifts to the employer to show the precise amount of work performed." Citing Mich. Laborers' Health Care Fund v. Grimaldi Concrete, Inc., 30 F.3d 692, 696 (6th Cir.1994); Brick Masons Pension Trust v. Indus. Fence & Supply, Inc., 839 F.2d 1333, 1338 (9th Cir.1988).

In this case it is clear that the Employer has not reported to the Funds or paid the Funds for hours worked by various categories of employees such as alleged part-timers, and alleged temporary employees and full time employees during their first 90 days of employment. The Employer's contribution obligation is unambiguously applicable to all employees employed in the positions covered by the bargaining unit, whether they were full time or part time, permanent or temporary, probationary or non-probationary. There is no reason to resort to the alleged oral assurances he received from various union officials because those assurances are contradicted by

the agreements that he entered into repeatedly. The contracts themselves establish the only basis for payment and Miron has established no reason for varying the terms of those agreements.

Section 302(c)(5) of the Labor Management Relations Act, 29 U.S.C. § 186(c)(5)(B), prohibits the oral modification of written trust agreements concerning contributions to fringe benefit funds. Section 302 of the Labor Management Relations Act, 29 U.S.C. § 186, forbids employers from transferring anything of value to union representatives. The section was enacted out of 'congressional concern over corruption of union officials and coercion of employers, to the detriment of honest bargaining relationships.' Lewis v. Seanor Coal Co., 382 F.2d 437 (3d Cir. 1967), cert. denied, 390 U.S. 947 (1968). In order to minimize the opportunities for corruption, Congress made it a crime for employers to pay anything of value to union representatives with certain narrow exceptions. One of those exceptions permits employer contributions to employee welfare funds but requires that the 'policy on which such payments are to be made' be 'specified in a written agreement with the employer.'

While the statute as written does not specifically prohibit oral modifications of written trust agreements, federal courts have uniformly concluded that such a limitation may be inferred from the overall anti-corruption purpose of § 302. See, e.g., Abate v. Browning-Ferris Industries, 767 F.2d 52, 55 (3d Cir.1985).(oral modifications to written agreements to contribute to union benefit funds are invalid); Mo-Kan Teamsters Pension Fund v. Creason, 716 F.2d 772, 777 (10th Cir. 1983), cert. denied, 104 S.Ct. 716 (1984); Maxwell v. Lucky Construction Co., Inc., 710 F.2d 1395, 1398 (9th Cir. 1983); Waggoner v. Dallaire, 649 F.2d 1362, 1366 (9th Cir. 1981); NYSA-ILA Medical & Clinical Services Fund v. Carco, Inc., 607 F. Supp. 1217, 1220 (D.N.J. 1985); Central States Southeast and Southwest Areas Pension Fund v. Kraftco, Inc., 589 F.Supp.

1061, 1074 (M.D. Tenn. 1984). In <u>Lewis v. Seanor Coal</u>, the earliest and most often cited of

these opinions, the Third Circuit specifically concluded that it would be illogical for Congress to

require a writing in order to preclude corruption, but then to allow oral modification of the

writing.  Thus, the policy of § 302(c)(5) requires that any modification of the basis of both the

payments into the fund and out of the fund be made in writing.  <u>Lewis</u>, 382 F.2d at 442-443,

<u>accord</u>, <u>Moglia v. Geoghegan</u>, 403 F.2d 110, 115 n.1 (2d Cir. 1968), <u>cert. denied</u>, 394 U.S. 919

(1969).

      It is black letter law under ERISA as well as Section 301 that an oral agreement with a

union cannot alter an employer's obligations to a third-party beneficiary fund.  <u>Cent. Pa.</u>

<u>Teamsters Health & Welfare Fund v. Scranton Bldg. Block Co.</u>, 882 F.Supp. 1542, 1544 (E.D.

Pa 1995).  That ruling is in accord with the prevailing case law.  <u>See</u>, <u>N.Y. State Teamsters</u>

<u>Conference Pension & Retirement Fund v. UPS</u>, 382 F.3d 272, 280 (2d Cir.2004) ("[O]therwise

valid collection regulations promulgated by a multiemployer plan to effectuate contributions

cannot be defeated by implied or unwritten agreements between the employers and unions.");

<u>Cent. States, SE & SW. Areas Pension Fund v. Kroger Co.</u>, 226 F.3d 903, 911 (7th Cir .2000)

("Because pension funds are entitled to rely on the terms of a CBA, a fund's reliance upon those

terms may not be thwarted by oral understandings between the employer and the union...");

<u>Bakery & Confectionery Union and Indus. Int'l Pension Fund v. Ralph's Grocery Co.</u>, 118 F.3d

1018, 1021 (4th Cir.1997) "( [A]n employer is not permitted to raise defenses that attempt to

show that the union and the employer agreed to terms different from those set forth in the

agreement."). This rule is consistent with Section 515's purpose of insulating benefit plans from

disputes between local unions and employers, <u>Cent. States, SE & SW Areas Pension Fund v.</u>

-23-

Gerber Trucks Serv. Inc., 870 F.2d 1148,1152-53 (7th Cir.1989) (en banc), in that it frees them from having "to monitor ... the understandings that arise between the individual unions and employers," Ralph's Grocery, 118 F.3d at 1021

ERISA provides for a mandatory remedy for violations of Section 515. ERISA Section 502(g) (2), 29 USC 1132(g) (2) provides, in pertinent part:

> (2)     In any action under this title by a fiduciary for or on behalf of a plan to enforce Section 515, in which a judgment in favor of the plan is awarded, the court shall award the plan
>
> (A)     the unpaid contributions,
>
> (B)     interest on the unpaid contributions,
>
> (C)     an amount equal to the greater of --
>
> (i)     interest on the unpaid contributions,
> or
> (ii)     liquidated damages provided for under the plan...
>
> (D)     reasonable attorney fees and costs of the action, to be paid by the defendant, and
>
> (E)     such other legal or equitable relief as the court deems appropriate.

As demonstrated above, this lawsuit is an action to enforce Section 515 of ERISA.

Pursuant to section 502 (g) (2) the Funds are entitled to interest on the past due amount through the date of judgment. In addition, the Funds should recover their reasonable costs and attorney fees incurred in connection with this litigation. In The Trustees of the UNITE HERE National Health Fund v. JY Apparels, Inc., ___ F.Supp.2d ___, 2008 WL 501362 (S.D.N.Y. 2008) (attached, Pilecki Decl. Exh. DD),  the court awarded judgement under 29 U.S.C. §

-24-

1132(g)(2)(B), as well as "costs of the action" under 29 U.S.C. § 1132(g)(2)(D),. The respondent

was ordered to pay "an amount equal to the greater of: (i) interest on the unpaid contributions, or

(ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent." 29

U.S.C. § 502(g)(2). See also Cement and Concrete Workers Dist. Council Welfare Fund, Pension

Fund, 35 F.3d 29 (2d Cir. 1994).  Under 29 U.S.C. § 1132(g)(2), penalties, including interest,

liquidated damages, reasonable attorney's fees, and costs, are available to a Fund fiduciary who

obtains a favorable judgment under § 1145.  No valid reason exists to except this Employer from

paying interest, liquidated damages, costs and attorneys fees.


## CONCLUSION

For the foregoing reasons,  the motion for summary judgement should be granted and an

Order should enter granting Plaintiffs the requested relief.


Dated: New York, New York
       March 21, 2008                     KENNEDY, JENNIK & MURRAY, P.C.
                                          Attorneys for Plaintiffs


                                          By: Thomas M. Kennedy (TK 0993)
                                          Elizabeth M. Pilecki (EP 5805)
                                          113 University Place
                                          New York, New York, 10003
                                          (212) 358-1500