# EXHIBIT D

AGREEMENT AND DECLARATION OF
TRUST THE AMALGAMATED SERVICE AND
ALLIED INDUSTRIES INSURANCE FUND

# TABLE OF CONTENTS

| ARTICLE | | PAGE |
|---|---|---|
| I | DEFINITIONS ...................... | 1 |
| II | NAME ............................. | 5 |
| III | PURPOSE .......................... | 6 |
| IV | OBLIGATIONS OF AN EMPLOYER ........ | 7 |
| V | DEFAULT BY AN EMPLOYER ............ | 8 |
| VI | TRUSTEE OFFICES, MEETINGS AND DESIGNATION ...................... | 9 |
| VII | POWERS AND DUTIES OF THE BOARD OF TRUSTEES ........................ | 17 |
| VIII | HEALTH PLANS ..................... | 26 |
| IX | ACCOUNTS AND RECORDS ............. | 28 |
| X | LIMITATIONS ON COMPENSATION ....... | 30 |
| XI | TAX EXEMPT STATUS ................. | 31 |
| XII | RIGHTS OF PARTIES ................. | 32 |
| XIII | DURATION AND TERMINATION OF TRUST ... | 35 |
| XIV | EXECUTION, INTERPRETATION AND AMENDMENTS ...................... | 37 |

WHEREAS, the Board of Trustees desire that this Agreement and Declaration of Trust conform at all times with the applicable requirements of the Labor Management Relations Act; 1947, as amended and qualify as a "qualified trust" and as an "exempt trust" pursuant to the Internal Revenue Code of 1986, as it may be amended (the "Code"), and the Employee Retirement Income Security Act of 1974, as amended;

NOW, THEREFORE, in consideration of the foregoing premises and other good and valuable consideration, the Trustees hereby mutually agree as follows:

## ARTICLE I

### DEFINITIONS

A.   Unless the context or subject matter otherwise requires, the following definitions shall govern in this Agreement.

Section 1.   The term "Union" shall mean the Union of Needletrades, Industrial and Textile Employees of its predecessor, the Amalgamated Clothing and Textile Workers Union.

Section 2.   The term "Employer" shall mean each Employer who with the approval of the Trustees has in the past executed either a Memorandum of Agreement with the

Fund or a collective bargaining agreement with the Union providing for contributions to the Fund, and every Employer who shall execute such an agreement in the future. If the Union and/or the Fund agrees to contribute to this Fund, pursuant to a Memorandum of Agreement with the Fund, the Union and/or the Fund shall also be deemed an Employer, provided however they shall not participate in the selection of Employer Trustees. An Employer is deemed to have accepted and become bound by this Agreement and Declaration of Trust by contributing to or having an obligation to contribute to the Fund.

Section 3. The term "Participant" shall mean (a) any individual who is employed by an Employer for whom the Employer is now, or will be, obligated to contribute to the Benefit Fund; (b) an officer or employee of the Union for whom the Union shall have agreed to contribute to the Benefit Fund; or (c) an employee of the Benefit Fund for whom the Trustees shall have agreed to contribute to the Benefit Fund.

Section 4. (a) The term "Employer Trustees" shall mean the Trustees appointed by the Employers contributing to the Fund; (b) the term "Union Trustees" shall mean the Trustees appointed by the Union; (c) the

2

term "Trustees" shall mean the Board of Trustees of the Benefit Fund (Employer Trustees and Union Trustees collectively) and any successor Trustees designated and appointed as provided in this Agreement and Declaration of Trust. The Trustees shall at all times be equally divided between representatives and designatees of the Union and representatives of the Employers.

Section 5. The term "Agreement and Declaration of Trust", "Agreement" or "Trust Agreement" shall mean this instrument, including any amendments hereto and modifications hereof.

Section 6. The term "Benefit Plan" or "Plan" means the Insurance Plan of the Amalgamated Service and Allied Insurance Fund established for the payment by the Trustees of benefits from the Benefit Fund, in accordance with such rules and regulations relating to eligibility requirements, amount, and computation of benefits, and the general administration and operation of the Benefit Fund as the Trustees may from time to time adopt and promulgate.

Section 7. The term "Benefit Fund" or "Fund" shall mean the Amalgamated Service and Allied Industries Insurance Fund formulated and established by this Agreement and Declaration of Trust and any amendments,

3

additions or deletions as the Trustees may adopt as provided in this Agreement and Declaration of Trust.

Section 8. The term "Contributions" shall mean the payments made to the Fund by Employers either under and pursuant to collective bargaining agreements with the Union, through a Memorandum of Agreement with the Fund, or under applicable law. If they desire to participate in the Plan, the Union and the Fund shall make contributions on behalf of their participating officers and/or employees on an equivalent basis, as determined by the Trustees, as the contributions made by Contributing Employers pursuant to a collective bargaining agreement with the Union.

Section 9. The term "Investment Manager" shall mean any fiduciary who has been designated by the Trustees to acquire, manage, control or dispose of any assets of the Benefit Fund, who acknowledges in writing that it is a fiduciary with respect to the Benefit Fund and who is: (a) registered as an investment adviser under the Investment Advisers Act of 1940; (b) a bank as defined in that Act; or (c) an insurance company qualified to perform services of managing, acquiring, or disposing of any plan assets under the laws of more than one state.

4

Section 10. The term "Policy" shall mean any policy or contract of insurance issued by an insurance company which has been accepted by the Trustees and which provides for the payment of any of the benefits set forth in the Benefit Plan. The term "Policy" shall be deemed to include any amendments or riders attached to such Policy.

Section 11. The term "Administrator" shall mean the individual, firm or entity appointed by the Trustees as provided in Article VII of this Trust Agreement.

Section 12. The term "Beneficiary" shall mean any person designated by a Participant, or by the terms of the Benefit Plan, who is entitled to a benefit under the Benefit Plan.

B. The term "Including" is used for illustration purposes only and may not be construed as limiting the term being illustrated to the examples provided.

## ARTICLE II

### NAME

This Benefit Fund shall be known as the Amalgamated Service and Allied Industries Insurance Fund.

5

## ARTICLE III

### PURPOSE

Section 1. The Benefit Fund shall comprise the entire assets derived from Contributions together with all investments made and held by the Trustees, including monies received by the Trustees as Contributions or as income or earnings from investments made by the Trustees or otherwise, and any other funds or property, received and/or held by the Trustees for the uses and purposes set forth in this Agreement. Income on the Fund, if earned, is incidental only and the Plan and Fund is not intended to produce income other than as may be collateral or incidental to its general operation and to avoid waste.

Section 2. The Benefit Fund is created for the exclusive purpose of (1) providing and maintaining hospitalization, sick, disability, accident, medical, and surgical benefits, life insurance, or death or other benefits as may be determined by the Trustees, for the benefit of Participants and their Beneficiaries; and (2) defraying the reasonable expenses of administering a Benefit Plan in accordance with this Trust Agreement.

## ARTICLE IV

## OBLIGATIONS OF AN EMPLOYER

Section 1.  An Employer under this Trust Agreement is obligated to make monthly Contributions to the Benefit Fund when due, as required by a collective bargaining agreement with the Union, under applicable law, or by other agreement with the Benefit Fund.

Section 2.  An Employer is obligated to furnish to the Trustees or the Plan Administrator, promptly on demand, the names of the Participants, their Social Security numbers, the hours worked by each Participant, and such other information as the Trustees may reasonably require in connection with the administration of the Benefit Fund.

Section 3.  An Employer is obligated to make available to the Trustees, the Benefit Fund's counsel, auditors, or designee for inspection and copying at reasonable times on the premises of the Employer, its payroll records whenever the Trustees consider such an examination to be advisable in connection with the administration of the Benefit Fund.

7

## ARTICLE V

### DEFAULT BY AN EMPLOYER

Section 1.   If an Employer defaults on its obligations under Article IV of this Agreement and Declaration of Trust, the Trustees may cease payment of benefits to Participants employed by that Employer and their Beneficiaries.   A defaulting Employer is not relieved of any obligations under Article IV if the Trustees cease payment of benefits. The Trustees may, in their sole discretion, continue payment of benefits to the extent that payments can, consonant with generally accepted accounting principles, be made from Policies prepaid with Contributions of that Employer or from reserves established for that purpose by the Trustees.

Section 2.   A defaulting Employer shall be liable to the Benefit Fund for interest, liquidated damages, attorneys' fees, and costs, including filing fees and service of process costs, incurred by the Benefit Fund during the collection of the Employer's delinquent Contributions or other payments.   The interest rate to be applied for the collection of delinquent Contributions shall be one percent per month or any part thereof or at such rate as the Trustees may from time to time determine, and liquidated damages shall be an amount

equal to the greater of interest on the delinquent
Contributions or twenty percent of the delinquent
Contributions.

Section 3. Nonpayment by an Employer of any
Contribution or other monies owed to the Benefit Fund
shall not relieve any other Employer from its obligations
to make required payments to the Benefit Fund.

Section 4. No Employer shall be entitled to,
or may require, the return of any part of the Benefit
Fund or any part of its Contributions or other payments.
However that: (1) a Contribution which is made by an
Employer by a mistake of fact or law may be returned by
the Trustees to that Employer within six months after the
Trustees determine that the Contribution was made by
mistake; and (2) a Contribution conditioned on the
deductibility of the Contribution under Section 162(a) of
the Code may be returned by the Trustees within one year
after a disallowance of the deduction.

ARTICLE VI

TRUSTEE OFFICES, MEETINGS AND DESIGNATION

Section 1. The operation and administration of
the Benefit Fund shall be the joint responsibility of the
Trustees. There shall not be less than eight (8)
Trustees, four (4) of whom shall be appointed by the

9

Union, and four (4) of whom shall be appointed by the Employers.

Section 2. Additional Trustees may be appointed from time to time by agreement between the Union and the Employers provided that such additional Trustees are subject to the same terms and conditions as are set forth in this Trust Agreement. At all times during the term of this Trust Agreement, the Employers and the Union shall be entitled to representation through an equal number of Employer Trustees and Union Trustees. Each and every successor Trustee shall, upon the acceptance in writing of the terms of this Agreement, be vested with all the rights, powers and duties of his predecessor.

Section 3. The Trustees accept their appointment as Trustees and consent to act as Trustees, and by affixing their signatures at the conclusion of the Agreement and Declaration of Trust do hereby declare and agree that they will receive and hold all Contributions and any other money or property or Policy which may come into their custody or under their control as Trustees under and by virtue of the terms, conditions, and provisions of this Trust Agreement and for the purposes

10

and with the powers and duties set forth in this Trust
Agreement.

Section 4. Each Trustee shall serve until
death, resignation, incapacity or removal as provided for
herein.

(a)  The death or incapacity of a Trustee shall
not operate to terminate the Trust, nor shall the legal
representatives of such Trustee be entitled to any
account or to take any action in the courts or otherwise,
and the appointment of such Trustee shall be deemed
purely personal and not a right that can descend to heirs
at law or legal representatives.

(b)  Any Employer Trustee may be removed and
replaced at will by a majority of the Employers
contributing to the Benefit Fund.  Any Union Trustee may
be removed and replaced at will by the Union.

(c)  A Trustee may resign by written notice
addressed to the Chairperson at least thirty (30) days
prior to the effective date of such resignation.

(d)  In the event of a vacancy caused by death,
resignation, incapacity or removal of a Union Trustee,
the Union shall designate a successor.  In the event of a
vacancy caused by death, resignation, incapacity or
removal of an Employer Trustee, the incumbent Employer

11

Trustees shall nominate an officer or representative of an Employer to serve as the new Employer Trustee. Each Trustee shall indicate his acceptance of the office in writing and file same with the Secretary before assuming office.

(e) Upon the death, removal, incapacity or resignation of a Trustee, all books, records, documents, property and assets of the Benefit Fund, in the possession or custody of the Trustee shall be transferred to the Benefit Fund within thirty (30) days thereafter.

Section 5. In all meetings of the Trustees, a majority of the Employer Trustees and a majority of the Union Trustees shall constitute a quorum for the transaction of business in person or by proxy.

Section 6. Any Trustee may empower, by signed writing, any other Trustee or Trustees to act in his or her stead at any meeting of the Trustees.

Section 7. The Employer Trustees, as a body, shall have one vote, and the Union Trustees, as a body, shall have one vote. The Employer Trustees shall cast their vote in the manner determined by a majority of the Employer Trustees voting in person or by proxy. The Union Trustees shall cast their vote in the manner determined by a majority of the Union Trustees voting in

12

person or by proxy.  No action shall be taken by the
Trustees except by vote of two to zero.

Section 8.  A deadlock occurs if (1) a majority
of the Employer Trustees or a majority of the Union
Trustees cannot agree upon the manner in which to cast
their vote or (2) the Trustees vote one to one.
Deadlocks shall be resolved in the following manner:

(a)  Within thirty (30) days of the most recent
occurrence of the deadlock, any Trustee may demand
arbitration under the Impartial Umpire Procedures for
Arbitration of Impasses Between Trustees of Joint Trust
and Pension Funds of the American Arbitration Association
at its New York City Regional Office.  The Trustee shall
send copies of the demand to the Chairperson and the
Secretary;

(b)  The Chairperson and the Secretary shall
select the arbitrator under those rules;

(c)  The arbitrator may hear and, subject to
the provisions of this Trust Agreement and applicable
law, determine the issue or issues on which there is a
deadlock.  The arbitrator shall be bound by the
provisions of this Agreement, and shall not have the
power to add to, subtract from, change or modify the
provisions hereof.  The arbitrator's decision shall be in

writing, signed, and delivered to the Chairperson and the
Secretary within fifteen days after the close of the
hearing or within such other period as the Trustees
determine unanimously; and

(d)  The fees and expenses of the arbitrator
and the American Arbitration Association shall be borne
by the Benefit Fund.

Section 9.  The Trustees shall select one
Trustee to act as Chairperson and one Trustee to act as
Secretary.  If the Chairperson is a Union Trustee, the
Secretary shall be an Employer Trustee, and _vice versa_.
The Chairperson and Secretary of the Trustees, when duly
authorized by the Trustees, may execute any certificate
or document jointly on behalf of the Trustees and such
execution shall be deemed execution by all of the
Trustees.  The Chairperson shall preside at all meetings
of the Trustees at which he shall be present.  The
Secretary shall approve the minutes of the meetings of
the Trustees, preside at Trustees' meetings in the
absence of the Chairperson, and perform such other
services as may be authorized pursuant to this Trust
Agreement or as may be assigned.

Section 10.  The Chairperson, the Secretary, or
any two other Trustees may call a meeting at any

14

reasonable time on at least seven days' notice.  Meetings
shall be held as frequently as is necessary to insure the
efficient administration of the Benefit Fund and at least
once during each quarter of each calendar year.  Meetings
may be held at any time without such notice if all
Trustees consent thereto in writing.  An individual
Trustee may not take action for or on behalf of the
Trustees between meetings except to the extent that the
Trustee may have been specifically authorized to do so.

Section 11.  The Trustees shall keep minutes of
all meetings, resolutions, and actions of the Trustees or
shall appoint someone to keep minutes.  Copies of the
minutes shall be sent to all Trustees and to such other
persons as the Trustees deem advisable.

Section 12.  The Trustees may elect such
Trustees as officers as they may think proper, may remove
any such officer summarily with or without cause, may
elect temporary officers and may accept the resignation
of any and all officers.

Section 13.  No vacancy or vacancies among the
Trustees shall impair the power of the remaining Trustees
to act in the manner provided by this Agreement, or to
administer the office of the Benefit Plan notwithstanding
the existence of such vacancy or vacancies.

**Section 14**.  Any successor Trustee as designated in the manner hereinabove provided shall be vested with all the rights, powers and duties of his predecessor upon the assumption of his office, except that he shall not automatically assume the office of Chairperson or Secretary if the predecessor held one of these offices.

**Section 15**.  Any successor Trustee designated as herein provided shall execute an acceptance of the office in writing which shall be deposited in the office of the Fund.

**Section 16**.  The obligations of the Benefit Fund and the Trustees under this Trust Agreement are not the personal obligations of the individual Trustees and employees of the Benefit Fund, and only the assets of the Benefit Fund shall be looked to for satisfaction of any claim under this Agreement even though the Trustees have signed any contracts or commitments.  Nothing herein is to be construed to prevent any Trustee or fiduciary from receiving any benefits to which he may be entitled as a Participant.  No past, present or future Trustee or employee of the Benefit Fund shall have any personal liability under this Agreement.

16

Neither the Employers nor the Union shall be liable for any of the acts, omissions or obligations of the Trustees, individually or collectively.

## ARTICLE VII

## POWERS AND DUTIES OF THE BOARD OF TRUSTEES

<u>Section 1</u>.  The Trustees shall supervise generally the administration of the Benefit Fund and any Benefit Plans.  Without limiting any other powers that inure to them as Trustees by law, the Trustees collectively may:

(1) Exercise general supervision of the operation of the Benefit Fund and conduct the business and activities of the Benefit Fund in accordance with this Agreement and Declaration of Trust and applicable law;

(2) Receive all Contributions and other payments and income of the Benefit Fund, except to the extent that such authority is delegated to one or more Investment Managers;

(3) Acquire, manage, and dispose of the assets of the Benefit Fund except to the extent that such authority is delegated to one or more Investment Managers;

(4) Hold any part of the assets of the Benefit Fund in cash or invest any part in any property, real, personal, or mixed, wherever situated, whether tangible or intangible, including governmental, corporate, or personal obligations, trust and participation certificates, leaseholds, fee titles, mortgages and other interests in realty, preferred and common stocks, and any other evidences of indebtedness or ownership;

17

(5) Receive, hold, pledge, or sell any securities or other property of any kind, nature, or description whatsoever that are tendered to them;

(6) Publicly or privately sell, transfer, exchange, or dispose of any securities or other property for cash, credit, other securities, or property;

(7) Register any securities or other property held by the Benefit Fund in the name of a nominee or nominees with or without indicating that the securities or other property are held in a fiduciary capacity and hold in bearer form any securities or other property so that title will pass by delivery; provided the books and records of the Trustees always indicate that these investments are the property of the Benefit Fund;

(8) Engage one or more Investment Managers to acquire, manage, and dispose of any assets of the Benefit Fund, including but not limited to, the right to vote any stocks, bonds, or other securities or to vote general or specific proxies;

(9) Engage an insurance company to which payments may be made and from which the benefits under a Benefit Plan may be provided;

(10) Engage an individual, firm or entity to be the "Administrator";

(11) Engage professionals, including actuaries, accountants, attorneys, program planners, computer technicians, investment counsel, and such others as they may consider necessary or advisable;

(12) Authorize withdrawals from the Benefit Fund by check, draft, voucher, or otherwise in a manner prescribed by the Trustees by duly adopted resolution;

(13) Vote in person or by proxy or otherwise upon any securities held by the Trustees and

18

exercise by attorney or in any other manner any right pertaining to securities or other property held by them including delegating such proxy voting power to Investment Manager(s);

(14) Consent to, participate in, or oppose the reorganization, consolidation, merger, dissolution, or financial readjustment of any corporation, company, or association, whose securities they may hold; or do any act with respect to the same they may consider necessary or advisable;

(15) Establish such reserve or reserves as they may consider necessary or advisable for the proper administration of the Benefit Plan; and establish an escrow bank account or accounts to the extent the Trustees deem necessary in their discretion;

(16) Make, execute, and deliver as Trustees any instruments in writing necessary or advisable for the effective exercise of any of their powers, or otherwise necessary or advisable to accomplish the purposes of the Benefit Fund and this Agreement and Declaration of Trust;

(17) Authorize by resolution any one or more of the Trustees to execute any notice or other instrument in writing on their behalf, and all persons, partnerships, corporations, or associations may rely on such resolution that such notice or instrument has been duly authorized and is binding on the Benefit Fund and the Trustees;

(18) Demand, collect, receive, and hold (a) Contributions, (b) other Employer payments required by a Benefit Plan or applicable law to be made to the Benefit Fund by Employers, and (c) all other money and property to which the Benefit Fund may be entitled;

(19) Take such steps, including the institution and prosecution of, and intervention in, any proceeding at law, in equity, or in bankruptcy, as they may consider necessary or advisable to

19

effectuate the collection of Contributions, other payments, money or property;

(20) Delegate any ministerial or clerical duty to any agents or employees including one or more Trustees;

(21) Lease or purchase such premises, material, supplies, and equipment as they may consider necessary or advisable;

(22) Pay or contest taxes of any nature levied upon the Benefit Fund;

(23) Seek judicial protection by any action or proceeding that they may consider necessary or advisable (a) to settle their accounts or (b) to obtain judicial determination or declaratory judgment as to any question or construction of any agreement or instruction as to any action thereunder;

(24) Merge the Benefit Fund with any other fund established for similar purposes under terms mutually agreeable to the respective Trustees subject to the approval of the Union and a majority of the Employers and consistent with applicable law and regulations;

(25) Exercise absolute discretionary authority to determine completely all matters arising in the administration, interpretation, and application of the Benefit Fund and any Benefit Plan including, but not limited to, all questions of coverage, eligibility, and methods of providing or arranging for benefits; and

(26) Promulgate such rules and regulations necessary to the effectuation of the purposes of this Agreement and Declaration of Trust and not inconsistent with the terms hereof;

(27) Adopt a procedure to afford a reasonable opportunity to any Participant whose claim for benefits has been denied, a full and fair review of the decision denying the claim;

(28) Do all other acts and take any other action, whether or not expressly authorized in this Trust Agreement, which they may consider necessary or advisable for the protection of the Benefit Fund and the effectuation of the purposes of this Trust Agreement.

Section 2. No Trustee, officer, agent, or representative may enter into any agreement or incur any obligation which shall in any way bind any Trustee individually, the Union, or the Employers. The Trustees may allocate fiduciary responsibilities among themselves or a committee of Trustees and designate individuals other than Trustees to carry out fiduciary responsibilities as provided in this Trust Agreement. The Trustees, however, may not allocate fiduciary responsibility to manage the assets of the Benefit Fund other than by appointing an Investment Manager or Managers.

Section 3. If an Investment Manager or Managers has been appointed in accordance with this Trust Agreement, no Trustee shall be liable for the acts or omissions of the Investment Manager or Managers or under an obligation to invest, manage, control, or dispose of any assets of the Benefit Fund which are managed and controlled by the Investment Manager(s).

Section 4. The Trustees shall be forever released from any responsibility or liability with

21

respect to any funds they may convey, pursuant to an
agreement, to any bank, trust company, or investment
company appointed under this Trust Agreement.

Section 5. The Trustees may appoint a
committee of Trustees which shall consist of an equal
number of Employer and Union Trustees. A majority of the
committee members shall constitute a quorum of any
committee and the voting requirements set forth in
Article VI of this Agreement shall apply to committee
votes. A committee member may be removed by the
Trustees.

Section 6. The Trustees may delegate their
ministerial and clerical duties to the Administrator if
one has been appointed.

Section 7. The Administrator may employ such
ministerial and clerical services and purchase or lease
such space, materials, supplies, and equipment as he or
she deems expedient, necessary, or appropriate in the
performance of his or her duties. The Administrator
shall (1) administer the office or offices of the Benefit
Fund and of the Trustees, supervise, coordinate, and
administer the accounting, bookkeeping, and clerical
services; (2) provide for the coordination of actuarial
services furnished by a consulting actuary; (3) prepare

22

(in cooperation, when appropriate, with the consulting actuary and independent auditor, consultant, or counsel) all reports and other documents to be prepared, filed, or disseminated by or on behalf of the Benefit Fund in accordance with the law; (4) assist in the collection of Contributions required to be paid to the Benefit Fund by Employers; and (5) perform such other duties and furnish such other services as may be assigned, delegated, or directed or as may be contracted by or on behalf of the Trustees.  The Administrator shall be the custodian of all documents, books, papers, and other records of the Trustees and of the Benefit Fund.

Section 8.  The Administrator may demand, collect, receive, and hold (1) Contributions; (2) other Employer payments required by a Benefit Plan or applicable law to be made to the Benefit Fund by Employers; and (3) all other money and property to which the Trustees may be entitled.

Section 9.  The Trustees shall authorize the purchase of surety fidelity bonds for themselves and all other persons who handle assets of the Benefit Fund in no less an amount than may be required by law.  They may also authorize the purchase of insurance for the Benefit Fund, the Benefit Plans, themselves collectively and

23

individually, and for any other fiduciary employed by the
Trustees to cover liability or losses occurring by a
breach of fiduciary responsibility or by any act or
omission of a fiduciary or on the part of any other
person occupying a fiduciary position provided such
insurance provides recourse by the insurer against the
Trustees and any covered fiduciary of the Health Fund.
The cost of such bonds and insurance shall be paid by the
Benefit Fund.  Provided, however, that Trustees and other
fiduciaries may purchase fiduciary insurance or
elimination of recourse riders to the Fund's insurance
policies at their own expense.

      Section 10.  The Trustees shall act with the
care, skill, prudence, and diligence under the
circumstances then prevailing that a prudent man acting
in a like capacity and familiar with such matters would
use in the conduct of an enterprise of a like character
and with like aims.  The Trustees shall act in accordance
with the documents and instruments governing the Benefit
Fund and the Benefit Plan(s) insofar as those documents
and instruments are consistent with the law.  Any matter
involved in or arising under this Trust Agreement shall
not be subject to the grievance or arbitration procedure
established by any collective bargaining agreement.

24

provided, however, that this provision shall not affect
the rights and liabilities of any parties to those
collective bargaining agreements.

Section 11.  When it is prudent and in the
Participants' interest, the Trustees may:  (1) forego the
collection of liability if it is apparent that the costs
involved would exceed the amount likely to be recovered;
(2) cooperate with an Employer's other creditors in a
contractual or court-supervised renegotiation of the
Employer's indebtedness; (3) make any other practical
collection decisions that are consistent with the
Trustees' fiduciary duties and characteristic of a
responsible creditor concerned with maximizing its
recovery net of costs.  Further, whenever the Trustees
decide to compromise or settle any matter, the
Administrator may execute on behalf of the Trustees all
documents that the Benefit Fund's counsel determines are
necessary to implement the compromise or settlement.

Section 12.  The Trustees shall have the sole
discretion to adjust, compromise, settle, or submit to
arbitration any claim or controversy by or against the
Benefit Fund or by or against the Trustees individually
or collectively in such manner as they consider prudent
and to commence and defend suits or legal proceedings and

25

to represent the Benefit Fund or the Trustees
individually or collectively in all suits and
proceedings.

Section 13.  The Trustees' expenses of any
action, suit, or proceeding brought by the Trustees or
against the Trustees or any of them (including counsel
fees and costs) shall be paid from the Benefit Fund,
except in any action, suit, or proceeding in which it is
adjudged that the Trustee committed an intentional or
grossly negligent breach of his or her fiduciary duties.

Section 14.  Neither the Trustees nor any agent
or representative appointed or elected by them shall have
any power or authority to enter into any agreement or
incur any obligation as herein provided which shall in
any way bind any of the Trustees, individually, or the
Union, or the individual Employers, but their power shall
be limited to obligations and agreements binding upon the
Trust herein.

### ARTICLE VIII

### HEALTH PLANS

Section 1.  The Trustees shall formulate,
adopt, and administer a Benefit Plan or Plans for the
payment of such health and welfare benefits for
Participants and Beneficiaries, as they deem advisable.

The Trustees shall also have the authority to amend, improve, revise, reduce or eliminate any benefit provided by the Benefit Fund.  Benefit Plans and any Benefit Plan amendments shall at all times comply with the applicable sections of the Code, all applicable Federal statutes and regulations, the collective bargaining agreements, and the purposes set forth in this Trust Agreement. Additionally, by resolution of the Board of Trustees, the Trustees may amend Benefit Plans, in the future, or retroactively, when they consider the same advisable.

Section 2.  The Trustees shall not be obligated to pay any health or welfare benefit if the payment of the benefit would result in loss of the Benefit Fund's tax-exempt status under the Code, or any applicable regulations or rulings.  The Trustees shall draft procedures, regulations, and conditions for the operation of Benefit Plans, including conditions of eligibility for Participants and Beneficiaries, procedures for claiming benefits, schedules of type and amount of benefits to be paid, and procedures for the distribution of benefits. The Trustees may also provide benefit payments through the purchase of group insurance contracts issued to the Trustees containing such provisions, options, and settlements as the Trustees may determine.

27

## ARTICLE IX

### ACCOUNTS AND RECORDS

Section 1.  The Trustees shall maintain accounts showing the fiscal transactions of the Benefit Fund and shall keep, in convenient form, such data as may be necessary for actuarial valuations of the assets and determination of liabilities of the Benefit Fund.  The Trustees shall prepare an annual report showing a reasonable summary of the assets and liabilities of the Benefit Fund and giving a brief account of the operation of the Benefit Fund for the past year and such further information as may be required.

Section 2.  The Trustees shall cause the Benefit Fund to be audited at least once a year and the statement of the results of the audit shall be available for inspection by interested persons at the office of the Benefit Fund, which shall be the situs of the trust.  The Trustees may change the office of the Benefit Fund at any time upon notice to the Union and Employers.

Section 3.  The Trustees shall prepare, sign, and furnish such statements, reports, and information, as required by law.

Section 4.  The Trustees, to the extent permitted by law, may rely upon all tables, valuations,

28

certificates, and reports furnished by any actuary, upon
all certificates and reports made by any accountant, upon
all opinions given by any legal counsel selected or
approved by the Trustees, and upon any advice given by
any other consultant retained by the Trustees for the
Benefit Fund.  The Trustees shall be fully protected in
respect of any action taken or suffered by them in good
faith in reliance upon any such tables, valuations,
certificates, reports, opinions, or other advice of any
actuary, accountant, counsel, or consultant.  All action
so taken or suffered shall be conclusive upon each
Trustee and upon the Union, Employers, Participants, and
Beneficiaries.

    Section 5.  The Trustees, to the extent
permitted by law, shall incur no liability in any action
taken by them in reliance upon any instrument,
application, notice, request, signed letter, telegram, or
other document believed by them to be genuine, to contain
a true statement of facts, and to be signed by the proper
person.  Any Trustee, to the extent permitted by law, may
rely upon any facts appearing in the records of the
Trustees or the Benefit Fund, any instrument on file with
the Benefit Fund, with the Union or with the Employers,
any facts certified to the Benefit Fund by the Union or

29

the Employers, and any facts contained in a public record.

Section 6.  Every instrument executed by the Trustees shall be conclusive evidence in favor of every person relying on the instrument that:  (1) when the instrument was executed, this Trust Agreement was in full force;  (2) the instrument was executed in accordance with this Trust Agreement; and  (3) the Trustees were duly authorized to execute this Trust Agreement.

Section 7.  In any controversy, claim, demand, suit at law, or other proceeding between the Trustees and any Participant, Beneficiary, or any other person, the Trustees may rely on:  (1) any facts appearing in the records of the Trustees, the Union, or the Employers;  (2) any facts certified to the Trustees by the Union or by an Employer; and  (3) any facts of public record.

## ARTICLE X

## LIMITATIONS ON COMPENSATION

The Trustees who are full-time employees of the Employer or the Union shall not receive compensation for the performance of their duties as Trustees, but may be reimbursed for all reasonable and necessary expenses which they may incur in the performance of their duties, including attendance at meetings and other functions of

the Trustees or its committees or at institutes,
seminars, conferences, or workshops on behalf of the
Benefit Fund upon submission of such vouchers as may be
required and approved by the Trustees.  However, this
does not prohibit any Employer or Union from receiving
compensation for necessary services provided to the Fund.
In addition, individuals who are not full-time employees
of the Employer or the Union may be compensated, as
directed by the Trustees.

## ARTICLE XI

### TAX EXEMPT STATUS

This Trust Agreement is entered into and
Contributions are being made upon the intention and
understanding of the Employers and the Union that all
contributions made by an Employer to the Benefit Fund are
legally deductible by the Employer for Federal income tax
purposes and that these Contributions are not taxable to
the Participants under the provisions of the Code.  The
Trustees shall take no action which would cause
Contributions made by an Employer not to be legally
deductible by the Employer for Federal income tax
purposes or to be taxable to the Participants, and the
Trustees will take such affirmative action as is
necessary to maintain the tax status of these

31

Contributions.  In addition, the Benefit Fund is intended to be a tax exempt organization under the Code.  The Trustees shall take no action which would cause the Benefit Fund to lose the tax-exempt status, and shall take such affirmative action as is necessary to maintain the tax-exempt status of the Benefit Fund.

## ARTICLE XII

### RIGHTS OF PARTIES

Section 1.  No Employer, Union, Participant, or Beneficiary shall have (1) any right, title, or interest in or to the Benefit Fund or any funds or other property of the Benefit Fund; (2) any right to examine any books, records, or accounts of the Trustees or of the Benefit Fund; or (3) any right to demand any accounting, except as specifically permitted by the Trustees or required by law.

Section 2.  There shall be no pro-rata or other distribution of any assets of the Benefit Fund as a result of any Union, Employer, or group of Employers, Participants, or Beneficiaries ceasing participation in the Benefit Fund for any purpose or reason except as required by law.

Section 3.  The Trustees shall not be bound by any notice, direction, requisition, advice, or request,

unless it shall have been received by the Trustees at the principal place of business of the Benefit Fund.

Section 4.  All benefits shall be free from the interference and control of any creditor, and no benefits shall be subject to any assignment, seizure, or sale under any legal, equitable, or any other process.  If a claim or benefit shall or may, because of any debt incurred by or resulting from any other claim or liability against any Participant or Beneficiary, by any sale, assignment, transfer, encumbrance, anticipation, or other disposition made or attempted by the Participant or Beneficiary, or by reason of any seizure or sale under any legal, equitable, or other process, or in any suit or proceeding, become payable to any person other than the Participant or Beneficiary for whom it is intended, the Trustees may withhold, consistent with applicable law, payment of the benefit to the Participant or Beneficiary until the sale, assignment, transfer, encumbrance, anticipation, or other disposition, writ, or legal process is cancelled or withdrawn in a manner satisfactory to the Trustees.

Section 5.  All questions or controversies, arising in any manner or between any parties or persons in connection with the Benefit Fund or its operation,

33

whether as to: (1) any claim for any benefits by any
Participant, Beneficiary, or any other person; (2) the
construction of the language or meaning of the by-laws,
rules, and regulations adopted by the Trustees or this
instrument; or (3) any writing, decision, instrument, or
account in connection with the operation of the Benefit
Fund or otherwise, shall be submitted to the Trustees, or
in the case of questions related to claims for benefits,
to an Appeals Committee, if one has been appointed.  The
decisions of the Trustees or Appeals Committee shall be
binding upon all persons dealing with the Benefit Fund or
claiming benefits, subject to the provisions of Section 7
of this Article and shall be given deference in any
arbital or judicial appeal of the decision.  In any such
appeal, the Trustees' or Appeals Committee's decision may
be overturned only if their interpretation of the Plan or
Trust Agreement was arbitrary and capricious or if the
Trustees' or Appeals Committee's decision was otherwise
arbitrary and capricious.

        Section 6.  If any question or dispute arises
concerning the proper person or persons to whom payments
shall be made, the Trustees may withhold payment until
the question or dispute is adjudicated satisfactorily in
the Trustees' sole discretion, or until the Trustees

34

shall have been protected against loss by means of such indemnification agreement or bond as they, in their sole discretion, determine to be adequate.

Section 7. Notice of any claim, dispute, or controversy against the Trustees or any of them must be given in writing, by certified mail, addressed to the Trustees at the office of the Benefit Fund. Any notice must set forth the nature of the claim, dispute, or controversy.

## ARTICLE XIII

### DURATION AND TERMINATION OF THE TRUST

Section 1. The Benefit Fund shall be irrevocable and shall continue indefinitely, as long as an Employer remains unless the Benefit Fund is terminated under sections 2, 3, or 4 of this Article XIII.

Section 2. The Trustees may terminate the Benefit Fund upon written notice to the Employers.

Section 3. The Union and a majority of Employers may terminate the Benefit Fund pursuant to an agreement between them. The Union and the Employers must give six months' written notice to the Trustees, and the Benefit Fund will terminate at the end of that period.

Section 4. The Benefit Fund will be deemed terminated if no Employer participates.

35

<u>Section 5</u>.  Upon termination, all funds, securities, notes, valuables, and property in the possession of the Trustees and held or owned by them under this Trust Agreement shall be allocated as provided by the the Benefit Plan(s) or as required by law.  Any remaining balance shall be turned over to such agency as may be determined and designated by the Participants, through the Union, to be used on behalf of these Participants as it considers proper.  The Trustees, each of them, and their heirs, executors, assigns, and legal representatives to the extent that they have an interest in the corpus of this Benefit Fund, shall execute such documents, deeds, assignments, or other indicia of title as may be necessary and proper to effectuate the transfer and termination.  The Trustees shall then be held harmless for any further obligation of the Benefit Fund, of any further duties as Trustees, and the obligation and debts of the Benefit Fund shall not be considered or become a personal obligation of the Trustees or of the parties who originally designated the Trustees to act in that capacity.

<u>Section 6</u>.  In terminating the Benefit Fund, the Trustees may reserve from the Benefit Fund an amount of assets they consider necessary or advisable to provide

36

for payment of:  (1) their expenses or the expenses of the Benefit Fund then or thereafter due and payable; (2) any compensation then or thereafter due or payable for services rendered to the Benefit Fund or the Trustees; and (3) any sums then or thereafter chargeable against the Benefit Fund or the Trustees for which the Benefit Fund or the Trustees may be liable.

## ARTICLE XIV

## EXECUTION, INTERPRETATION AND AMENDMENTS

Section 1.  This Trust Agreement may be executed in one or more counterparts.  Each duplicate original executed by the Trustees may be considered as the original Trust Agreement, and the signature of a party on any counterpart shall be sufficient evidence of his or her execution of the Trust Agreement.

Section 2.  This Trust Agreement shall be construed liberally to promote and effectuate the establishment and operation of the Benefit Fund.  The Trustees shall have complete discretionary authority to interpret, apply, and construe the provisions of this Trust Agreement, and any construction, interpretation, and application adopted by the Trustees in good faith shall be binding upon the Union, Employers, Participants, Beneficiaries, and all other parties.  The Trustees'

37

benefit eligibility decisions and their interpretation of
the terms of the Plan and Trust Agreement shall be given
deference in any arbital or judicial appeal of the
decision.  In any appeal of benefit determinations, in
arbitration or otherwise, the Trustees' decision may be
overturned only if the Trustees' interpretation of the
Plan or Trust Agreement's terms was otherwise arbitrary
and capricious.

Section 3.  The Benefit Fund is created and
accepted in the State of New York and all questions
pertaining to the validity or construction of this
instrument and of the acts and transactions of the
parties shall be determined in accordance with the laws
of the State of New York except to the extent superseded
or preempted by Federal law, including the Employee
Retirement Income Security Act of 1974, as amended, and
the Internal Revenue Code.

Section 4.  If any provision of this Trust
Agreement conflicts with the law, that provision shall
continue in effect only to the extent permitted by law.
If subsequently, that provision no longer conflicts with
the law, that provision shall be restored in full as
originally embodied in this Trust Agreement.  The
invalidity or unenforceability of any provision of this

MAY-24-1996  09:31                                2122623088    P.03/07

Trust Agreement shall not affect any other provision of
this Trust Agreement.

    Section 5.  The provisions of this Trust
Agreement may be altered or amended at any time by an
instrument in writing approved by and executed by a vote
of the Trustees in accord with Article VI, provided (1)
the amendment complies with the purpose of the Benefit
Fund and (2) no amendment diverts any of the corpus of
the trust from the purposes of the Benefit Fund.

    IN WITNESS WHEREOF, the Trustees have executed
this Agreement and Declaration of Trust to evidence their
acceptance of the trust created under the collective
bargaining agreements between the Union and the Employers
and their agreement to be bound by the terms of those
agreements and by this instrument.

Dated: October 20, 1995.

UNION TRUSTEES                 EMPLOYER TRUSTEES

39

NY1:41663

40