# EXHIBIT E

**AGREEMENT AND DECLARATION OF TRUST**
**THE AMALGAMATED SERVICE AND ALLIED**
**INDUSTRIES RETIREMENT FUND**

# TABLE OF CONTENTS

**ARTICLE**                                                                    **PAGE**

I        DEFINITIONS ..........................      1

II       NAME .................................      6

III      PURPOSE ..............................      6

IV       OBLIGATIONS OF AN EMPLOYER ..........      7

V        DEFAULT BY AN EMPLOYER ..............      8

VI       TRUSTEE OFFICES, MEETINGS AND
         DESIGNATION .........................      10

VII      POWERS AND DUTIES OF THE BOARD
         OF TRUSTEES .........................      18

VIII     INDEMNIFICATION OF TRUSTEES .........      31

IX       PENSION ..............................      34

X        ACCOUNTS AND RECORDS ...............      35

XI       LIMITATIONS ON COMPENSATION ........      38

XII      TAX EXEMPT STATUS ..................      39

XIII     RIGHTS OF PARTIES ..................      40

XIV      DURATION AND TERMINATION OF
         TRUST ...............................      43

XV       EXECUTION, INTERPRETATION AND
         AMENDMENTS ..........................      45

WHEREAS, the Board of Trustees desire that the Agreement and Declaration of Trust comply with the applicable requirements of the Labor Management Relations Act, 1947, <u>as amended</u>, and qualify as a "qualified trust" and as an "exempt trust" pursuant to the Internal Revenue Code of 1986, <u>as it may be amended</u> (the "Code"), and the Employee Retirement Income Security Act of 1974, <u>as amended</u> ("ERISA");

NOW, THEREFORE, in consideration of the foregoing premises and other good and valuable consideration, the Trustees hereby mutually agree as follows:

### ARTICLE I

### DEFINITIONS

A.  Unless the context or subject matter otherwise requires, the following definitions shall govern in this Agreement.

<u>Section 1</u>.  The term "Union" shall mean the Union of Needletrades, Industrial and Textile Employees or its predecessor, the Amalgamated Clothing and Textile Workers Union.

Section 2. The term "Employer" shall mean each Employer who with the approval of the Trustees has executed either a Memorandum of Agreement with the Fund or a collective bargaining agreement with the Union providing for contributions to the Fund, and every Employer who shall execute such an agreement in the future. If the Union and/or the Fund agrees to contribute to this Fund, pursuant to a Memorandum of Agreement with the Fund, the Union and/or the Fund shall also be deemed an Employer for purposes related to Fund contributions, provided however they shall not participate in the selection of Employer Trustees. An Employer is deemed to have accepted and become bound by this Agreement and Declaration of Trust by contributing to or having an obligation to contribute to the Fund.

Section 3. The term "Participant" shall mean (a) any individual who is employed by an Employer for whom the Employer is now, or will be, obligated to contribute to the Fund; (b) an officer or employee of the Union for whom the Union shall have agreed to contribute to the Fund; or (c) an employee of the Fund for whom the Trustees shall have agreed to contribute to the Fund.

2

Section 4. (a) The term "Employer Trustees" shall mean the Trustees appointed by the Employers contributing to the Fund; (b) the term "Union Trustees" shall mean the Trustees appointed by the Union; (c) the term "Trustees" shall mean the Board of Trustees of the Fund (Employer Trustees and Union Trustees collectively) and any successor Trustees designated and appointed as provided in this Agreement and Declaration of Trust. The Trustees shall at all times be equally divided between representatives of the Union and representatives of the Employers.

Section 5. The term "Agreement and Declaration of Trust", "Agreement" or "Trust Agreement" shall mean this instrument, including any amendments hereto and modifications hereof.

Section 6. The term "Pension Plan" or "Plan" means the Retirement Plan of the Amalgamated Service and Allied Industries Insurance Fund established for the payment by the Trustees of benefits from the Pension Fund, in accordance with such rules and regulations relating to eligibility requirements, amount, and computation of benefits, and the general administration

3

and operation of the Pension Fund as the Trustees may from time to time adopt and promulgate.

Section 7.  The term "Pension Fund" or "Fund" shall mean the Amalgamated Service and Allied Industries Retirement Fund formulated and established by this Agreement and Declaration of Trust and any amendments, additions or deletions as the Trustees may adopt as provided in this Agreement and Declaration of Trust.

Section 8.  The term "Contributions" shall mean the payments made to the Fund by Employers either under and pursuant to collective bargaining agreements with the Union, through a Memorandum of Agreement with the Fund, or under applicable law.  If they desire to participate in the Plan, the Union and the Fund shall make contributions on behalf of their participating officers and/or employees on an equivalent basis, as determined by the Trustees, as the contributions made by Contributing Employers pursuant to a collective bargaining agreement with the Union.

Section 9.  The term "Investment Manager" shall mean any fiduciary who has been designated by the Trustees to acquire, manage, control or dispose of any

4

assets of the Fund, who acknowledges in writing that it is a fiduciary with respect to the Fund and who is: (a) registered as an investment adviser under the Investment Advisers Act of 1940; (b) a bank as defined in that Act; or (c) an insurance company qualified to perform services of managing, acquiring, or disposing of any plan assets under the laws of more than one state.

Section 10. The term "Administrator" shall mean the individual, firm or entity appointed by the Trustees as provided in Article VII of this Trust Agreement.

Section 11. The term "Beneficiary" shall mean any person designated by a Participant, or by the terms of the Plan, who is entitled to a benefit under the Plan.

B. The term "Including" is used for illustration purposes only and may not be construed as limiting the term being illustrated to the examples provided.

5

## ARTICLE II

### NAME

This Pension Fund shall be known as the Amalgamated Service and Allied Industries Retirement Fund.

## ARTICLE III

### PURPOSE

Section 1.  The Pension Fund shall comprise the entire assets derived from Contributions together with all investments made and held by the Trustees, including monies received by the Trustees as Contributions or as income or earnings from investments made by the Trustees or otherwise, and any other funds or property, received and/or held by the Trustees for the uses and purposes set forth in this Agreement.  Income on the Pension Fund, if earned, is incidental only and the Plan and Fund is not intended to produce income other than as may be collateral or incidental to its general operation and to avoid waste.

Section 2.  The Pension Fund is created for the exclusive purpose of (1) providing pension benefits or other benefits as may be determined by the Trustees, for the benefit of Participants and their Beneficiaries; and

6

(2) defraying the reasonable expenses of administering a Pension Plan in accordance with this Trust Agreement.

### ARTICLE IV

### OBLIGATIONS OF AN EMPLOYER

Section 1.  An Employer under this Trust Agreement is obligated to make Contributions to the Pension Fund when due, as required by a collective bargaining agreement with the Union, under applicable law, or by other agreement with the Fund.

Section 2.  An Employer is obligated to furnish to the Trustees or the Plan Administrator, promptly on demand, the names of the Participants, their Social Security numbers, the hours worked by each Participant, paid hours, and such other information as the Trustees may reasonably require in connection with the administration of the Fund.

Section 3.  An Employer is obligated to make available to the Trustees, the Pension Fund's counsel, auditors, or designee for inspection and copying at reasonable times on the premises of the Employer, its payroll records whenever the Trustees consider such an

7

examination to be advisable in connection with the administration of the Fund.

## ARTICLE V

### DEFAULT BY AN EMPLOYER

Section 1.  The Trustees shall from time to time adopt a collection policy which shall provide that an Employer who does not make contributions within a certain time frame shall be deemed in default of its obligations under the Trust Agreement.  If an Employer defaults on its obligations to make Contributions under Article IV of this Agreement and Declaration of Trust, the Trustees may commence legal action or may proceed to arbitration.  The Employer and Union Trustees will agree on a neutral arbitrator(s) to whom any dispute regarding delinquencies shall be submitted.  The Employer shall be liable to the Pension Fund for all costs incurred by the Pension Fund in collecting such delinquent amounts, including arbitration fees, interest, auditors' fees, liquidated damages, attorneys' fees, and costs, including filing fees and service of process costs, incurred by the Pension Fund during the collection of the Employer's delinquent Contributions or other payments.  The interest rate to be applied for the collection of delinquent

8

NY3: 8585.01

Contributions shall be one and one-half percent per month or any part thereof or at such rate as the Trustees may from time to time determine, and liquidated damages shall be an amount equal to the greater of interest on the delinquent Contributions or twenty percent of the delinquent Contributions.  As a condition of acceptance as a contributing employer to the Fund, each Employer will be bound by the terms of this Trust Agreement, including the provision for collections of contributions.

Section 2.  In the event that an Employer fails to provide records or permit audits, pursuant to Article IV of this Agreement and Declaration of Trust, the Trustees may commence legal action or may proceed to arbitration.  If the Employer is deemed to have violated its obligations under this Agreement and Declaration of Trust, the Employer shall pay the costs of the action or arbitration, plus legal fees, interest and liquidated damages.

Section 3.  Nonpayment by an Employer of any Contribution or other monies owed to the Fund shall not relieve any other Employer from its obligations to make required payments to the Pension Fund.

9

Section 4.  No Employer shall be entitled to, or may require, the return of any part of the Pension Fund or any part of its Contributions or other payments. However: (1) a Contribution which is made by an Employer by a mistake of fact or law may be returned by the Trustees to that Employer within six months after the Trustees determine that the Contribution was made by mistake; and (2) a Contribution conditioned on the deductibility of the Contribution under Section 162(a) of the Code may be returned by the Trustees within one year after a disallowance of the deduction.

## ARTICLE VI

### TRUSTEE OFFICES, MEETINGS AND DESIGNATION

Section 1.  The operation and administration of the Pension Fund shall be the joint responsibility of the Trustees.  There shall not be less than eight (8) Trustees, four (4) of whom shall be appointed by the Union, and four (4) of whom shall be appointed by the Employers.

Section 2.  Additional Trustees may be appointed from time to time by agreement between the Union and the Employers provided that such additional Trustees are subject to the same terms and conditions as

10

are set forth in this Trust Agreement. At all times during the term of this Trust Agreement, the Employers and the Union shall be entitled to representation through an equal number of Employer Trustees and Union Trustees. Each and every successor Trustee shall, upon the acceptance in writing of the terms of this Agreement, be vested with all the rights, powers and duties of his predecessor.

Section 3. The Trustees accept their appointment as Trustees and consent to act as Trustees, and by affixing their signatures at the conclusion of the Agreement and Declaration of Trust do hereby declare and agree that they will receive and hold all Contributions and any other money or property or Contract which may come into their custody or under their control as Trustees under and by virtue of the terms, conditions, and provisions of this Trust Agreement and for the purposes and with the powers and duties set forth in this Trust Agreement.

Section 4. Each Trustee shall serve until death, resignation, incapacity or removal as provided for herein.

11

NY3: 8585.01

(a)   The death or incapacity of a Trustee shall not operate to terminate the Trust, nor shall the legal representatives of such Trustee be entitled to any account or to take any action in the courts or otherwise, and the appointment of such Trustee shall be deemed purely personal and not a right that can descend to heirs at law or legal representatives.

(b)   Any Employer Trustee may be removed and replaced at will by a majority of the Employers contributing to the Pension Fund.   Any Union Trustee may be removed and replaced at will by the Union.

(c)   A Trustee may resign by written notice addressed to the Chairperson at least thirty (30) days prior to the effective date of such resignation.

(d)   In the event of a vacancy caused by death, resignation, incapacity or removal of a Union Trustee, the Union shall designate a successor.   In the event of a vacancy caused by death, resignation, incapacity or removal of an Employer Trustee, the incumbent Employer Trustees shall nominate an officer or representative of an Employer to serve as the new Employer Trustee.   Each Trustee shall indicate his acceptance of the office in writing and file same with the Secretary before assuming office.

12

(e) Upon the death, removal, incapacity or resignation of a Trustee, all books, records, documents, property and assets of the Pension Fund, in the possession or custody of the Trustee shall be transferred to the Pension Fund within thirty (30) days thereafter.

Section 5. In all meetings of the Trustees, a majority of the Employer Trustees and a majority of the Union Trustees shall constitute a quorum for the transaction of business in person or by proxy.

Section 6. Any Trustee may empower, by signed writing, any other Trustee or Trustees to act in his or her stead at any meeting of the Trustees.

Section 7. The Employer Trustees, as a body, shall have one vote, and the Union Trustees, as a body, shall have one vote. The Employer Trustees shall cast their vote in the manner determined by a majority of the Employer Trustees voting in person or by proxy. The Union Trustees shall cast their vote in the manner determined by a majority of the Union Trustees voting in person or by proxy. No action shall be taken by the Trustees except by vote of two to zero.

13

<u>Section 8</u>.  A deadlock occurs if (1) a majority of Employer Trustees or a majority of the Union Trustees cannot agree upon the manner in which to cast their vote or (2) the Trustees vote one to one.  Deadlocks shall be resolved in the following manner:

(a)  Within thirty (30) days of the most recent occurrence of the deadlock, any Trustee may demand arbitration under the Impartial Umpire Procedures for Arbitration of Impasses between Trustees of Joint Trust and Pension Funds of the American Arbitration Association at its New York City Regional Office.  The Trustee shall send copies of the demand to the Chairperson and the Secretary;

(b)  The Chairperson and the Secretary shall select the arbitrator under those rules;

(c)  The arbitrator may hear and, subject to the provisions of this Trust Agreement and applicable law, determine the issue or issues on which there is a deadlock.  The arbitrator shall be bound by the provisions of this Agreement, and shall not have the power to add to, subtract from, change or modify the provisions hereof.  The arbitrator's decision shall be in writing, signed, and delivered to the Chairperson and the Secretary within thirty days after the close of the

14

hearing or within such other period as the Trustees determine unanimously; and

(d)  The fees and expenses of the arbitrator and the American Arbitration Association shall be borne by the Pension Fund.

Section 9.  The Trustees shall select one Trustee to act as Chairperson and one Trustee to act as Secretary.  If the Chairperson is a Union Trustee, the Secretary shall be an Employer Trustee, and vice versa. The Chairperson and Secretary of the Trustees, when duly authorized by the Trustees, may execute any certificate or document jointly on behalf of the Trustees and such execution shall be deemed execution by all of the Trustees.  The Chairperson shall preside at all meetings of the Trustees at which he or she shall be present.  The Secretary shall approve the minutes of the meetings of the Trustees, preside at Trustees' meetings in the absence of the Chairperson, and perform such other services as may be authorized pursuant to this Trust Agreement or as may be assigned.

Section 10.  The Chairperson, the Secretary, or any two other Trustees may call a meeting at any reasonable time on at least seven days' notice.  Meetings

15

shall be held as frequently as is necessary to insure the efficient administration of the Pension Fund and at least once during each quarter of each calendar year.  Meetings may be held at any time without such notice if all Trustees consent thereto in writing.  Meetings may also be held by telephone conference call.  An individual Trustee may not take action for or on behalf of the Trustees between meetings except to the extent that the Trustee may have been specifically authorized to do so.

Section 11.  The Secretary shall keep minutes of all meetings, resolutions, and actions of the Trustees or shall appoint someone to keep minutes.  Copies of the minutes should be sent to all Trustees and to such other persons as the Trustees deem advisable.

Section 12.  The Trustees may elect such Trustees as officers as they may think proper, may remove any such officer summarily with or without cause, may elect temporary officers and may accept the resignation of any and all officers.

Section 13.  No vacancy or vacancies among the Trustees shall impair the power of the remaining Trustees to act in the manner provided by this Agreement, or to

16

administer the office of the Pension Plan notwithstanding the existence of such vacancy or vacancies.

Section 14. Any successor Trustee as designated in the manner hereinabove provided shall be vested with all the rights, powers and duties of his or her predecessor upon the assumption of his or her office, except that he or she shall not automatically assume the office of Chairperson or Secretary if the predecessor held one of these offices.

Section 15. Any successor Trustee designated as herein provided shall execute an acceptance of the office in writing which shall be deposited in the office of the Fund.

Section 16. The obligations of the Pension Fund and the Trustees under this Trust Agreement are not the personal obligations of the individual Trustees and employees of the Pension Fund, and only the assets of the Pension Fund shall be looked to for satisfaction of any claim under this Agreement even though the Trustees have signed any contracts or commitments. Nothing herein is to be construed to prevent any Trustee or fiduciary from receiving any benefits to which he or she may be entitled

17

as a Participant.  No past, present or future Trustee or employee of the Pension Fund shall have any personal liability under this Agreement.

Neither the Employers nor the Union shall be liable for any of the acts, omissions or obligations of the Trustees, individually or collectively.

<u>ARTICLE VII</u>

<u>POWERS AND DUTIES OF THE BOARD OF TRUSTEES</u>

<u>Section 1</u>.  The Trustees shall supervise generally the administration of the Pension Fund and any Pension Plans.  Without limiting any other powers that inure to them as Trustees by law, the Trustees collectively may:

(1)  Exercise general supervision of the operation of the Pension Fund and conduct the business and activities of the Pension Fund in accordance with this Agreement and Declaration of Trust and applicable law;

(2)  Receive all Contributions and other payments and income of the Pension Fund, except to the extent that such authority is delegated to one or more Investment Managers;

18

NY3: 8585.01

(3)  Acquire, manage, and dispose of the assets of the Pension Fund except to the extent that such authority is delegated to one or more Investment Managers;

(4)  Hold any part of the assets of the Pension Fund in cash or invest any part in any property, real, personal, or mixed, wherever situated, whether tangible or intangible, including governmental, corporate, or personal obligations, trust and participation certificates, leaseholds, fee titles, mortgages and other interests in realty, preferred and common stocks, and any other evidences of indebtedness or ownership;

(5)  Receive, hold, pledge, or sell any securities or other property of any kind, nature, or description whatsoever that are tendered to them;

(6)  Publicly or privately sell, transfer, exchange, or dispose of any securities or other property for cash, credit, other securities, or property;

(7)  Register any securities or other property held by the Pension Fund in the name of a nominee or

19

nominees with or without indicating that the
securities or other property are held in a
fiduciary capacity and hold in bearer form any
securities or other property so that title will
pass by delivery; provided the books and
records of the Trustees always indicate that
these investments are the property of the
Pension Fund;

(8) Engage one or more Investment Managers to
acquire, manage, and dispose of any assets of
the Pension Fund, including but not limited to,
the right to vote any stocks, bonds, or other
securities or to vote general or specific
proxies;

(9) Engage an individual, firm or entity to be the
"Administrator";

(10) Engage professionals, including actuaries,
accountants, attorneys, program planners,
computer technicians, investment counsel, and
such others as they may consider necessary or
advisable;

(11) Authorize withdrawals from the Pension Fund by
check, draft, voucher, or otherwise in a manner

20

prescribed by the Trustees by duly adopted
resolution;

(12) Vote in person or by proxy or otherwise upon
any securities held by the Trustees and
exercise by attorney or in any other manner any
right pertaining to securities or other
property held by them including delegating such
proxy voting power to Investment Manager(s);

(13) Consent to, participate in, or oppose the
reorganization, consolidation, merger,
dissolution, or financial readjustment of any
corporation, company, or association, whose
securities they may hold; or do any act with
respect to the same they may consider necessary
or advisable;

(14) Establish such reserve or reserves as they may
consider necessary or advisable for the proper
administration of the Pension Plan; and
establish an escrow bank account or accounts to
the extent the Trustees deem necessary in their
discretion;

(15) Make, execute, and deliver as Trustees any
instruments in writing necessary or advisable
for the effective exercise of any of their

21

powers, or otherwise necessary or advisable to accomplish the purposes of the Pension Fund and this Agreement and Declaration of Trust;

(16) Authorize by resolution any one or more of the Trustees to execute any notice or other instrument in writing on their behalf, and all persons, partnerships, corporations, or associations may rely on such resolution that such notice or instrument has been duly authorized and is binding on the Pension Fund and the Trustees;

(17) Demand, collect, receive, and hold (a) Contributions, (b) other Employer payments required by the Pension Plan or applicable law to be made to the Pension Fund by Employers, and (c) all other money and property to which the Pension Fund may be entitled;

(18) Take such steps, including the institution and prosecution of, and intervention in, any proceeding at law, in equity, or in bankruptcy, as they may consider necessary or advisable to effectuate the collection of Contributions, other payments, money or property;

22

(19) Delegate any ministerial or clerical duty to any agents or employees including one or more Trustees;

(20) Lease or purchase such premises, material, supplies, and equipment as they may consider necessary or advisable;

(21) Pay or contest taxes of any nature levied upon the Pension Fund;

(22) Seek judicial protection by any action or proceeding that they may consider necessary or advisable (a) to settle their accounts or (b) to obtain judicial determination or declaratory judgment as to any question or construction of any agreement or instruction as to any action thereunder;

(23) Merge the Pension Fund with any other fund established for similar purposes under terms mutually agreeable to the respective Trustees subject to the approval of the Union and a majority of the Employers and consistent with applicable law and regulations;

(24) Exercise absolute discretionary authority to determine all matters arising in the administration, interpretation, and application

23

of the Pension Fund and the Pension Plan
including, but not limited to, all questions of
coverage, eligibility, and methods of providing
or arranging for benefits;

(25) Promulgate such rules and regulations necessary
to the effectuation of the purposes of this
Agreement and Declaration of Trust and not
inconsistent with the terms hereof;

(26) Adopt a procedure to afford a reasonable
opportunity to any Participant whose claim for
benefits has been denied, a full and fair
review of the decision denying the claim;

(27) Do all other acts and take any other action,
whether or not expressly authorized in this
Trust Agreement, which they may consider
necessary or advisable for the protection of
the Fund and the effectuation of the purposes
of this Trust Agreement.

Section 2. No Trustee, officer, agent, or
representative may enter into any agreement or incur any
obligation which shall in any way bind any Trustee
individually, the Union, or the Employers. The Trustees
may allocate fiduciary responsibilities among themselves

24

or a committee of Trustees and designate individuals other than Trustees to carry out fiduciary responsibilities as provided in this Trust Agreement.

Section 3.  If an Investment Manager or Managers has been appointed in accordance with this Trust Agreement, no Trustee shall be liable for the acts or omissions of the Investment Manager or Managers or under an obligation to invest, manage, control, or dispose of any assets of the Pension Fund which are managed and controlled by the Investment Manager(s).

Section 4.  The Trustees shall be forever released from any responsibility or liability with respect to any funds they may convey pursuant to an agreement, to any bank, trust company, or investment company appointed under this Trust Agreement.

Section 5.  The Trustees shall be required to place the funds with a custodian to the extent required by law.

Section 6.  The Trustees may appoint a committee of Trustees which shall consist of an equal number of Employer and Union Trustees, the number of which shall be determined by the Trustees.  A majority of

25

the Employer Trustee committee members and of the Union Trustee committee members shall constitute a quorum of any committee and the voting requirements set forth in Article VI of this Agreement shall apply to committee votes. A committee member may be removed by the Trustees.

Section 7. The Trustees may delegate their ministerial and clerical duties to the Administrator if one has been appointed.

Section 8. The Administrator may employ such ministerial and clerical services and purchase or lease such space, materials, supplies, and equipment as he or she deems expedient, necessary, or appropriate in the performance of his or her duties. The Administrator shall (1) administer the office or offices of the Pension Fund and of the Trustees, supervise, coordinate, and administer the accounting, bookkeeping, and clerical services; (2) provide for the coordination of actuarial services furnished by a consulting actuary; (3) prepare (in cooperation, when appropriate, with the consulting actuary and independent auditor, consultant, or counsel) all reports and other documents to be prepared, filed, or disseminated by or on behalf of the Pension Fund in

NY3: 8585.01

accordance with the law; (4) assist in the collection of Contributions required to be paid to the Pension Fund by Employers; and (5) perform such other duties and furnish such other services as may be assigned, delegated, or directed or as may be contracted by or on behalf of the Trustees. The Administrator shall be the custodian of all documents, books, papers, and other records of the Trustees and of the Pension Fund.

Section 9. The Administrator may demand, collect, receive, and hold (1) Contributions; (2) other Employer payments required by a the Plan or applicable law to be made to the Pension Fund by Employers; and (3) all other money and property to which the Trustees may be entitled.

Section 10. The Trustees shall authorize the purchase of surety fidelity bonds for themselves and all other persons who handle assets of the Pension Fund in no less an amount than may be required by law. They may also authorize the purchase of insurance for the Pension Fund, the Pension Plans, themselves collectively and individually, and for any other fiduciary employed by the Trustees to cover liability or losses occurring by a breach of fiduciary responsibility or by any act or

NY3: 8585.01

omission of a fiduciary or on the part of any other
person occupying a fiduciary position provided such
insurance provides for no recourse by the insurer against
the Trustees and any covered fiduciary of the Pension
Fund.  The cost of such bonds and insurance shall be paid
by the Pension Fund.  Provided, however, that Trustees
and other fiduciaries shall purchase additional fiduciary
insurance or elimination of recourse riders to the Fund's
insurance policies at their own expense.

Section 11.  The Trustees shall act with the
care, skill, prudence, and diligence under the
circumstances then prevailing that a prudent person
acting in a like capacity and familiar with such matters
would use in the conduct of an enterprise of a like
character and with like aims.  The Trustees shall act in
accordance with the documents and instruments governing
the Pension Fund and the Pension Plan insofar as those
documents and instruments are consistent with the law.
Any matter involved in or arising under this Trust
Agreement shall not be subject to the grievance or
arbitration procedure established by any collective
bargaining agreement; provided, however, that this
provision shall not affect the rights and liabilities of

28

any parties to those collective bargaining agreements;
and further provided that the collection or provision of
records relating to contributions which may be required
under this Trust Agreement or collective bargaining
agreement shall be subject to the grievance or
arbitration procedure established by any collective
bargaining agreement.

Section 12. When it is prudent and in the
Participants' interest, the Trustees may: (1) forego the
collection of liability if it is apparent that the costs
involved would exceed the amount likely to be recovered;
(2) cooperate with an Employer's other creditors in a
contractual or court-supervised renegotiation of the
Employer's indebtedness; (3) make any other practical
collection decisions that are consistent with the
Trustees' fiduciary duties and characteristic of a
responsible creditor concerned with maximizing its
recovery net of costs. Further, whenever the Trustees
decide to compromise or settle any matter, the
Administrator may execute on behalf of the Trustees all
documents that the Pension Fund's counsel determines are
necessary to implement the compromise or settlement.

NY3: 8585.01

Section 13.  The Trustees shall have the sole discretion to adjust, compromise, settle, or submit to arbitration any claim or controversy by or against the Pension Fund or by or against the Trustees individually or collectively in such manner as they consider prudent and to commence and defend suits or legal proceedings and to represent the Fund or the Trustees individually or collectively in all suits and proceedings.

Section 14.  The Trustees' expenses of any action, suit, or proceeding brought by the Trustees or against the Trustees or any of them (including counsel fees and costs) shall be paid from the Pension Fund, except in any action, suit, or proceeding in which it is adjudged that the Trustee committed an intentional or grossly negligent breach of his or her fiduciary duties.

Section 15.  Neither the Trustees nor any agent or representative appointed or elected by them shall have any power or authority to enter into any agreement or incur any obligation as herein provided which shall in any way bind any of the Trustees, individually, or the Union, or the individual Employers, but their power shall be limited to obligations and agreements binding upon the Trust herein.

30

## ARTICLE VIII

### INDEMNIFICATION OF TRUSTEES

Section 1. Neither the Trustees nor any individual or successor Trustee shall be personally answerable or personally liable for any liabilities or debts of the Pension Fund contracted by them as such Trustees, or for the non-fulfillment of contracts, but the same shall be paid out of the Pension Fund and the Pension Fund is hereby charged with a first lien in favor of such Trustees for his or their security and indemnification for any amounts paid out such Trustees for any such liability and for his and their security and indemnification against any liability of any kind which the Trustees or any of them incur hereunder; provided, however, that nothing herein shall exempt any Trustee from liability arising out of his own willful misconduct or bad faith or entitle such Trustee to indemnification for any accounts paid or incurred as a result thereof.

Section 2. The Trustees shall be fully protected in acting upon any instrument, certificate, or paper believed by them to be genuine and to be signed or presented by the proper person or persons and shall be under no duty to make any investigation or inquiry as to any statement contained in any such writing, but may

31

accept the same as conclusive evidence of the truth and accuracy of the statement therein contained.

Section 3. The Trustees shall not be liable for the proper application of any part of the Pension Fund or for any other liabilities arising in connection with the administration of the operation of the Pension Fund, except as herein provided.

Section 4. The Trustees may from time to time consult with legal counsel and shall be fully protected in acting upon the advice of such counsel.

Section 5. The Trustees may, in their sole discretion, seek judicial protection by any action or proceeding they may deem necessary to settle their accounts, or to obtain a judicial determination or declaratory judgment as to any question of construction on the Pension Fund Agreement or instruction as to action thereunder.

Section 6. In addition to the indemnification provided in Section 1 hereof and subject to its limitations, the parties agree to indemnify and save harmless the Trustees against any liability, loss, cost or damage that the Trustees may incur in the exercise and

32

performance of their duties and powers hereunder, and further, to indemnify and protect the Trustees from any and all claims, demands, suits, or legal proceedings that may be brought against them by employees, their beneficiaries, legal representatives or other "interested" parties.

Section 7. No person, partnership, corporation or association dealing with the Trustees shall be obligated to see the application of any funds, securities or other property paid or delivered to the Trustees or to see that the terms of the Trust have been complied with or be obligated to inquire into the authority of the Trustees or the necessity or expediency of any act of the Trustees and every instrument effected by the Trustees shall be conclusive in favor of any person, partnership, corporation or association relying thereon that (1) at the time of the delivery of the said instrument the Trust was in full force and effect; (2) said instrument was affected in accordance with the terms and conditions of this Agreement and Declaration of Trust; and (3) the Trustees were duly authorized and empowered to execute such instrument.

33

NYJ: 8585.01

## ARTICLE IX

### PENSION

Section 1. The Trustees shall formulate, adopt, and administer a Pension Plan for the payment of such retirement benefits for Participants and Beneficiaries, as they deem advisable. The Trustees shall also have the authority to amend, improve, revise, reduce or eliminate any benefit provided by the Pension Fund provided that such amendment complies with ERISA, the Code and all applicable Federal statutes and regulations. Additionally, by resolution of the Board of Trustees, the Trustees may amend the Plan, in the future, or retroactively, when they consider the same advisable. The Pension Plan and any Plan amendments shall at all times comply with the applicable sections of ERISA, the Code, all applicable Federal statutes and regulations, the collective bargaining agreements, and the purposes set forth in this Trust Agreement.

Section 2. The Trustees shall not be obligated to pay any retirement benefit if the payment of the benefit would result in loss of the Pension Fund's tax-exempt status under the Code, or any applicable regulations or rulings. The Trustees shall draft procedures, regulations, and conditions for the operation

34

NY3: 8585.01

of the Pension Plan, including conditions of eligibility
for Participants and Beneficiaries, procedures for
claiming benefits, schedules of type and amount of
benefits to be paid, and procedures for the distribution
of benefits.

## ARTICLE X

### ACCOUNTS AND RECORDS

Section 1.   The Trustees shall maintain
accounts showing the fiscal transactions of the Pension
Fund and shall keep, in convenient form, such data as may
be necessary for actuarial valuations of the assets and
determination of liabilities of the Pension Fund.   The
Trustees shall prepare an annual report showing a
reasonable summary of the assets and liabilities of the
Pension Fund and giving a brief account of the operation
of the Pension Fund for the past year and such further
information as may be required.

Section 2.   The Trustees shall cause the
Pension Fund to be audited at least once a year by a
Certified Public Accountant and the statement of the
results of the audit shall be available for inspection by
interested persons at the office of the Pension Fund,
which shall be the situs of the trust, or any other site

35

as required by law.  The Trustees may change the office
of the Pension Fund at any time upon notice to the Union
and Employers.

     Section 3.  The Trustees shall prepare, sign,
and furnish such statements, reports, and information, as
required by law.

     Section 4.  The Trustees, to the extent
permitted by law, may rely upon all tables, valuations,
certificates, and reports furnished by any actuary, upon
all certificates and reports made by any accountant, upon
all opinions given by any legal counsel selected or
approved by the Trustees, and upon any advice given by
any other consultant retained by the Trustees for the
Fund.  The Trustees shall be fully protected in respect
of any action taken or suffered by them in good faith in
reliance upon any such tables, valuations, certificates,
reports, opinions, or other advice of any actuary,
accountant, counsel, or consultant.  All action so taken
or suffered shall be conclusive upon each Trustee and
upon the Union, Employers, Participants, and
Beneficiaries.

NY3: 8585.01

Section 5.  The Trustees, to the extent permitted by law, shall incur no liability in any action taken by them in reliance upon any instrument, application, notice, request, signed letter, telegram, or other document believed by them to be genuine, to contain a true statement of facts, and to be signed by the proper person.  Any Trustee, to the extent permitted by law, may rely upon any facts appearing in the records of the Trustees or the Pension Fund, any instrument on file with the Pension Fund, with the Union or with the Employers, any facts certified to the Pension Fund by the Union or the Employers, and any facts contained in a public record.

Section 6.  Every instrument executed by the Trustees shall be conclusive evidence in favor of every person relying on the instrument that:  (1) when the instrument was executed, this Trust Agreement was in full force; (2) the instrument was executed in accordance with this Trust Agreement; and (3) the Trustees were duly authorized to execute this Trust Agreement.

Section 7.  In any controversy, claim, demand, suit at law, or other proceeding between the Trustees and any Participant, Beneficiary, or any other person, the

37

Trustees may rely on:  (1) any facts appearing in the records of the Trustees, the Union, or the Employers; (2) any facts certified to the Trustees by the Union or by an Employer; and (3) any facts of public record.

**ARTICLE XI**

**LIMITATIONS ON COMPENSATION**

The Trustees who are full-time employees of the Employer or the Union shall not receive compensation for the performance of their duties as Trustees, but may be reimbursed for all reasonable and necessary expenses which they may incur in the performance of their duties, including attendance at meetings and other functions of the Trustees or its committees or at institutes, seminars, conferences, or workshops on behalf of the Pension Fund upon submission of such vouchers as may be required and approved by the Trustees.  However, this does not prohibit any Employer or the Union from receiving compensation for necessary services provided to the Fund.  In addition, individuals who are not full-time employees of the Employer or the Union may be compensated, as directed by the Trustees.

NY3: 8585.01

## ARTICLE XII

## TAX EXEMPT STATUS

This Trust Agreement is entered into and Contributions are being made upon the intention and understanding of the Employers and the Union that all contributions made by an Employer to the Pension Fund are legally deductible by the Employer for Federal income tax purposes and that these Contributions are not taxable to the Participants under the provisions of the Code.  The Trustees shall take no action which would cause Contributions made by an Employer not to be legally deductible by the Employer for Federal income tax purposes or to be taxable to the Participants, and the Trustees will take such affirmative action as is necessary to maintain the tax status of these Contributions.  In addition, the Pension Fund is intended to be a tax exempt organization under the Code.  The Trustees shall take no action which would cause the Pension Fund to lose the tax-exempt status, and shall take such affirmative action as is necessary to maintain the tax-exempt status of the Pension Fund.

39

## ARTICLE XIII

### RIGHTS OF PARTIES

Section 1. No Employer, Union, Participant, or
Beneficiary shall have (1) any right, title, or interest
in or to the Pension Fund or any funds or other property
of the Pension Fund; (2) any right to examine any books,
records, or accounts of the Trustees or of the Pension
Fund; or (3) any right to demand any accounting, except
as specifically permitted by the Trustees or required by
law.

Section 2. There shall be no pro-rata or other
distribution of any assets of the Pension Fund as a
result of any Union, Employer, or group of Employers,
Participants, or Beneficiaries ceasing participation in
the Pension Fund for any purpose or reason except as
required by law.

Section 3. The Trustees shall not be bound by
any notice, direction, requisition, advice, or request,
unless it shall have been received by the Trustees at the
principal place of business of the Pension Fund.

Section 4. All benefits shall be free from the
interference and control of any creditor, and, except as
otherwise provided by ERISA or the Code, no benefits

40

shall be subject to any assignment, seizure, or sale under any legal, equitable, or any other process. If a claim or benefit shall or may, because of any debt incurred by or resulting from any other claim or liability against any Participant or Beneficiary, by any sale, assignment, transfer, encumbrance, anticipation, or other disposition made or attempted by the Participant or Beneficiary, or by reason of any seizure or sale under any legal, equitable, or other process, or in any suit or proceeding, become payable to any person other than the Participant or Beneficiary for whom it is intended, the Trustees may withhold, consistent with applicable law, payment of the benefit to the Participant or Beneficiary until the sale, assignment, transfer, encumbrance, anticipation, or other disposition, writ, or legal process is cancelled or withdrawn in a manner satisfactory to the Trustees.

Section 5.  All questions or controversies, arising in any manner or between any parties or persons in connection with the Pension Fund or its operation, whether as to: (1) any claim for any benefits by any Participant, Beneficiary, or any other person; (2) the construction of the language or meaning of the by-laws,

NY3:8585.01

rules, and regulations adopted by the Trustees or this instrument; or (3) any writing, decision, instrument, or account in connection with the operation of the Pension Fund or otherwise, shall be submitted to the Trustees, or in the case of questions related to claims for benefits, to an Appeals Committee, if one has been appointed. The Trustees or Appeals Committee shall have complete discretionary authority to decide such matters. The decisions of the Trustees or Appeals Committee shall be binding upon all persons dealing with the Pension Fund or claiming benefits, subject to the provisions of Section 7 of this Article and shall be given deference in any arbital or judicial appeal of the decision. In any such appeal, the Trustees' or Appeals Committee's decision may be overturned only if their interpretation of the Plan or Trust Agreement was arbitrary and capricious or if the Trustees' or Appeals Committee's decision was otherwise arbitrary and capricious.

Section 6. If any question or dispute arises concerning the proper person or persons to whom payments shall be made, the Trustees may withhold payment until the question or dispute is adjudicated satisfactorily in the Trustees' sole discretion, or until the Trustees

NY3: 8585.01

shall have been protected against loss by means of such
indemnification agreement or bond as they, in their sole
discretion, determine to be adequate.

Section 7. Notice of any claim, dispute, or
controversy against the Trustees or any of them must be
given in writing, by certified mail, addressed to the
Trustees at the office of the Pension Fund. Any notice
must set forth the nature of the claim, dispute, or
controversy.

**ARTICLE XIV.**

**DURATION AND TERMINATION OF THE TRUST**

Section 1. The Pension Fund shall continue
indefinitely, as long as an Employer remains unless the
Pension Fund is terminated under sections 2, 3, or 4 of
this Article XIV.

Section 2. The Trustees may terminate the
Pension Fund upon written notice to the Employers.

Section 3. The Union and a majority of
Employers may terminate the Pension Fund pursuant to an
agreement between them. The Union and the Employers must
give six months' written notice to the Trustees, and the
Pension Fund will terminate at the end of that period.

43

Section 4.  The Pension Fund will be deemed terminated if no Employer participates.

Section 5.  Upon termination, all funds, securities, notes, valuables, and property in the possession of the Trustees and held or owned by them under this Trust Agreement shall be allocated as provided by the Pension Plan in accordance with ERISA, the Code and any applicable state law.  The Trustees, each of them, and their heirs, executors, assigns, and legal representatives to the extent that they have an interest in the corpus of this Pension Fund, shall execute such documents, deeds, assignments, or other indicia of title as may be necessary and proper to effectuate the transfer and termination.  The Trustees shall then be held harmless for any further obligation of the Pension Fund, of any further duties as Trustees, and the obligation and debts of the Pension Fund shall not be considered or become a personal obligation of the Trustees or of the parties who originally designated the Trustees to act in that capacity.

Section 6.  In terminating the Pension Fund, the Trustees may reserve from the Pension Fund an amount of assets they consider necessary or advisable to provide

44

NY3: 8585.01

for payment of: (1) their expenses or the expenses of the Pension Fund then or thereafter due and payable; (2) any compensation then or thereafter due or payable for services rendered to the Pension Fund or the Trustees; and (3) any sums then or thereafter chargeable against the Pension Fund or the Trustees for which the Pension Fund or the Trustees may be liable.

## ARTICLE XV
### EXECUTION, INTERPRETATION AND AMENDMENTS

Section 1. This Trust Agreement may be executed in one or more counterparts. Each duplicate original executed by the Trustees may be considered as the original Trust Agreement, and the signature of a party on any counterpart shall be sufficient evidence of his or her execution of the Trust Agreement.

Section 2. This Trust Agreement shall be construed to promote and effectuate the establishment and operation of the Pension Fund. The Trustees shall have complete discretionary authority to interpret, apply, and construe the provisions of this Trust Agreement, and any construction, interpretation, and application adopted by the Trustees in good faith shall be binding upon the Union, Employers, Participants, Beneficiaries, and all

45

other parties. The Trustees' benefit eligibility
decisions and their interpretation of the terms of the
Plan and Trust Agreement shall be given deference in any
arbital or judicial appeal of the decision. In any
appeal of benefit determinations, in arbitration or
otherwise, the Trustees' decision may be overturned only
if the Trustees' interpretation of the Plan or Trust
Agreement's terms was otherwise arbitrary and capricious.

Section 3. The Pension Fund is created and
accepted in the State of New York and all questions
pertaining to the validity or construction of this
instrument and of the acts and transactions of the
parties shall be determined in accordance with the laws
of the State of New York except to the extent superseded
or preempted by Federal law, including ERISA and the
Code.

Section 4. If any provision of this Trust
Agreement conflicts with the law, that provision shall
continue in effect only to the extent permitted by law.
If subsequently, that provision no longer conflicts with
the law, that provision shall be restored in full as
originally embodied in this Trust Agreement. The
invalidity or unenforceability of any provision of this

46