UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

TRUSTEES OF THE LAUNDRY, DRY CLEANING
WORKERS AND ALLIED INDUSTRIES HEALTH
FUND, UNITE HERE!; and TRUSTEES OF THE
LAUNDRY, DRY CLEANING WORKERS AND
ALLIED INDUSTRIES RETIREMENT FUND,
UNITE HERE!                                                          07-CV-6999 (DLC)

                               Plaintiffs,

     - against -

B&M LINEN CORP. D/B/A MIRON & SONS
LINEN SUPPLY A/K/A MIRON & SONS LINEN,
INC.,

                               Defendant.

-------------------------------------------------------------------x

## PLAINTIFFS' RULE 56.1 STATEMENT
## IN SUPPORT OF MOTION SUMMARY JUDGMENT

### The Parties

1.    Plaintiff Laundry, Dry Cleaning Workers and Allied Industries Health Fund, UNITE HERE! ("Health Fund") is an "employee welfare benefit plan" as defined in Section 3(1) of ERISA, 29 U.S.C. § 1002(1).

2.    Plaintiff Laundry, Dry Cleaning Workers and Allied Industries Retirement Fund, UNITE HERE! ("Retirement Fund") is an "employee pension benefit plan" as defined in Section 3(2) of ERISA 29 U.S.C. § 1002(2).

3.    The Health Fund and the Retirement Fund (together, "the Funds") maintain their principal administrative offices at 730 Broadway, New York, New York 10003.

4. Amalgamated Life Insurance Co. ("ALICO") is the plan administrator for the Funds as defined by (CITE ERISA SECTION).

5. Plaintiff Trustees of the Laundry, Dry Cleaning Workers and Allied Industries Health Fund, UNITE HERE! ("Trustees") are fiduciaries within the meaning of Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), as defined in Section 3(21) of ERISA, 29 U.S.C. § 1002(21).

6. Plaintiff Trustees of the Laundry, Dry Cleaning Workers and Allied Industries Retirement Fund, UNITE HERE! ("Trustees") are fiduciaries within the meaning of Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), as defined in Section 3(21) of ERISA, 29 U.S.C. § 1002(21).

7. The same individuals sit as Trustees for both the Health Fund and the Retirement Fund. (Larancuent Dep. p. 11, L. 3-16.)[1]

8. The Laundry, Dry Cleaning and Allied Workers Joint Board-UNITE HERE! ("the Union") is an unincorporated "labor organization" as defined in Section 3(4) of ERISA, 29 U.S.C. § 1002(4).

9. Wilfredo Larancuent is and has been the Manager of the Laundry, Dry Cleaning and Allied Workers Joint Board, UNITE HERE! Since 2000 (Larancuent Dep. p. 9, L. 4.)

---

[1] Excerpts of transcripts of depositions in this case are attached to the Declaration of Elizabeth M. Pilecki, dated March 20, 2008, ("Pilecki Decl.") as follows:

Exhibit A - Deposition of Miron Markus, January 29, 2008 and February 8, 2008 ("Miron Dep.")
Exhibit B - Deposition of Wilfredo Larancuent, February 20, 2008 ("Larancuent Dep.")
Exhibit C - Deposition of Gabriel Vonleh, February 27, 2008, (Vonleh Dep.")

10. B&M Linen Corp. D/B/A Miron & Sons Linen Supply A/K/A Miron & Sons Linen, Inc. ("B&M" or "the Employer") is a New York corporation having its principal place of business at 220 Coster Street, Bronx, New York 10474. (Miron Dep. p. 10, L. 12-13.)

11. Prior to its present principal place of business, B&M was located at 310 Walton Avenue, Bronx, New York, 10454. (Miron Dep. p. 11, L. 23-24.)

12. Miron Markus ("Miron") is and has been the President of Defendant B&M Linen Corp. D/B/A Miron & Sons Linen Supply A/K/A Miron & Sons Linen, Inc. for the past twenty years. (Miron Dep. p. 11, L.7-9.)

13. The Union represents employees at B&M Linen Corp D/B/A Miron & Sons Linen Supply A/K/A Miron & Sons Linen, Inc. The bargaining unit includes "all of the employees of the employer except guards and supervisors as defined by the National Labor Relations Act." (Pilecki Decl., Exh. F, p. 4, Art. I, Exh. G, p. 4, Art. I.)

The Collective Bargaining Agreements

14. The Union and the Employer have been parties to a series of collective bargaining agreements that cover all relevant periods herein. (Pilecki Decl., Exhs. F, G, H, I.)

15. The Union and the Employer were parties to a collective bargaining agreement effective from November 28, 2000 through November 27, 2003 ("the November 2000 CBA") (Pilecki Decl., Exh. F.), a collective bargaining agreement effective from November 28, 2003 through November 27, 2006 ("the November 2003 CBA") (Pilecki Decl., Exh. G.) which was modified by a February 7, 2004 stipulation between the Union and the Employer. (Pilecki Decl., Exh. F.)

16. The November 2000 CBA provided that the Employer would pay contributions equal to 10% of gross payroll to the Insurance Fund effective January 1, 2001, 11% effective January 1, 2002. (Pilecki Decl., Exh. F, p. 60.)

17. The February 7, 2004 Stipulation provided that the Employer is required to make contributions to the Health Fund (also known as Social Insurance) at a rate of 11% of the Employer's gross payroll effective November 28, 2003, 11.5% of the Employer's gross payroll effective November 28, 2004 and 12% of the Employer's gross payroll effective November 28, 2005. (Pilecki Decl., Exh. F. at para. 4(a), Exh. G, p. 48-49.)

18. The Employer is required to make contributions to the Retirement Fund at a rate of 0.8% of the Employer's gross payroll effective November 28, 2003. (Pilecki Decl., Exh. F at para 4(b), Exh. G, p. 53-54.)

19. The Employer is required to make contributions to the Scholarship and Education and Legal Services Fund at a rate of 0.2% effective November 28, 2003. (Pilecki Decl., Exh. F at para. 4(c), Exh. G, p. 53-54.)

20. The Union and the Employer are parties to a Stipulation dated November 27, 2006 ("November 27, 2006 Stipulation") (Pilecki Decl., Exh. I.) that further modified and extended the November 2003 CBA to November 27, 2009. (Pilecki Decl., Exhs. G, I.)

21. The Employer is required to make contributions to the Health Fund at a rate of 12.9% of the Employer's gross payroll effective November 27, 2006, 13.6% of the Employer's gross payroll effective November 26, 2007 and 14.3% of the Employer's gross payroll effective December 1, 2008. (Pilecki Decl., Exh. I at para. 4(a).)

22. The Employer is required to make contributions to the Retirement Fund at a rate of 1.1% of the Employer's gross payroll effective November 27, 2006, 1.4% of the Employer's

gross payroll effective November 26, 2007 and 1.6% of the Employer's gross payroll effective December 1, 2008. (Pilecki Decl. Exh. G. at para. 4(b).)

23. The Employer is required to make contributions to the Scholarship and Education and Legal Services Fund at a rate of .4% of the Employer's gross payroll effective November 27, 2006. (Pilecki Decl. Exh. G. at para. 4(c).)

24. The Union and the Employer are also parties to a Settlement Agreement dated February 7, 2004 which resolved charges filed with the National Labor Relations Board against the Employer as well as an arbitration award in the Union's favor and related litigation to enforce the award all related to the Union's allegations that the Employer failed to honor the CBA's wage rates, wage increases and certain leave provisions. (Pilecki Decl. Exh. H.)

### The Trust Agreements

25. The Employer is deemed to have accepted and becomes bound by the Agreement and Declaration of Trust for the Insurance Fund and the Retirement Fund ("Trust Agreements") by contributing to or having an obligation to contribute to the Funds. (Warbet Decl. Exh. D, Art. I, Section 3, Exh. E, Art. I, Section 3, Exh. F, p. 59-60, Exh. G, p. 48-49.)

26. The Employer's obligations under the Trust Agreements are to make contributions to the Funds when due, to furnish to the Funds employee information reaonably required in connection with the administration of the Funds, and to make available to the Funds or its designees payroll records for examination and copying. (Warbet Decl. Exh. D, Art. IV, Sections 1-3, Exh. E., Art. IV, Sections 1-3.)

27. The Trust Agreements provide that an employer who defaults in its obligation to the Funds shall be liable to the Funds for all "costs incurred by the [Funds] in collecting such delinquent amounts, including . . . interest, auditor's fees, liquidated damages, attorney's fees,

and costs . . . duirng the collection of the Employer's delinquent Contributions or other payments." (Warbet Decl. Exh. D, Art. V, Sec. 1, Exh. E, Art. V, Section 1.)

28. The interest rate applied for the collection of delinquent contributions is one and one-half percent per month or any part thereof and liquidated damages are the greater of interest on the delinquent contributions or twenty percent of the delinquent contributions. (Warbet Decl. Exh. D, Art. V, Sec. 1, Exh. E, Art. V, Section 1.)

### The Employer's Breach Of Its Obligation To Make Contributions Based On the Wages Of All Employees

29. The Employer is obligated to pay contributions to the Fund based on the gross wages of all employees in the bargaining unit. (Pilecki Decl. Exh. F, p., 60 para. 1-3, Exh. G, p. 48-49, para. 1-3, Warbet Decl. Exh. D, Art. IV(1), Exh. E, Art. IV(1).)

30. The definition of the bargaining unit does not exclude part-time employees. (Pilecki Decl. Exh. F, Art. 1, Exh. G, Art. 1.)

31. The definition of the bargaining unit does not exclude employees who are working for the Employer during their "trial period." (Pilecki Decl. Exh. F, Art. 1, Exh. G, Art. I.)

32. The definition of the bargaining unit does not exclude employees deemed "independent" by the Employer. (Pilecki Decl. Exh. F, Art. 1, Exh. G, Art. I.)

33. The definintion of the bargaining unit does not exclude employees who tell the Employer that they do not want to be members of the Union. (Pilecki Decl. Exh. F, Art. 1, Exh. G, Art. I.)

34. Miron cannot point to any written agreement or recall any specific conversation where he and the Union or a Union officer agreed that the Employer was not required to pay

contributions to the Funds for the gross payroll of part-time employees or employees during their trial period. (Miron Dep. p. 32, L. 20 - p. 33, L. 4, p .34, L. 22 - p. 37, L. 15, p. 39, L. 7-13, p. 47, L. 8-15, p. 48, L.6-15, p.64, L. 17 - p. 65, L. 25, p. 68, L. 17 - p. 69, L. 3, p. 77, L. 3-10.)

35.  The Employer does not report the wages to the funds for employees in the bargaining unit during their first three months of employment and the Employer does not pay contributions to the Funds based on a percentage of their gross wages. (Miron Dep. p. 63, L. 15-24, p. 83. L. 10-17, p. 154, L. 24- 156, L. 3.)

36.  The Employer does not report the wages to the Funds for part time employees in the bargaining unit and does not pay contributions to the Funds based on a percentage of their gross wages. (Miron Dep. p. 63, L. 25 - p. 64, L. 2, p. 68, L. 2-16, p. 83, L. 6-9, p. 152, L. 6-24.)

37.  The Employer does not report wages to the Funds for employees who claim that they do not want to join the Union and does not pay contributions to the Funds based on a percentage of their gross wages. (Miron Dep. p. 156, L. 4-16, p. 157, L. 20 - p. 158, L. 5, p. 161, L. 17 - p. 162, L. 7, p. 164, L. 15 - p. 167, L. 2.)

38.  Miron agrees that every job in the shop is a Union job. (Miron Dep. p. 158, L. 9-11.)

39.  The Employer produced during discovery Quarterly Combined Withholding, Wage Reporting and Unemployment Insurance Returns, Form NYS-45-MN ("NYS-45") for the tax years 2005 and 2006, and for the first and second quarters of 2007. Each of the four NYS-45s is dated October 17, 2007. (Pilecki Decl. Exhs. K-N, Miron Dep. p. 103, L. 17-19, p.104. L. 24 - p. 105, L. 6.)

40.  The NYS-45s contain the names and wages reported to the State of New York for each of the Employer's employees. In addition, the NYS-45s contained hand written notations

regarding each employee's status (part-time, supervisor, independent, worked one month) when they were produced to the Plaintiffs for this matter. (Pilecki Decl. Exhs. K-N, Miron Dep. p.107, L.4-10.)

41.     Based on the employees listed in the NYS-45s, Miron Markus created and produced a document that contained information regarding the hire and termination dates for certain employees as well as notations as to the employee's position with the Employer such as "union," "supervisor," and "plant manager." (Pilecki Decl. Exh. Z, Miron Dep. p.147, L.20 - p. 148, L.3.)

<u>The Employer Owes $79,049.046 For Contributions Owed Prior to March 19, 2004</u>

42.     The Funds and the Employer are parties to an Agreement dated March 20, 2003 ("March 20, 2003 Settlement") which settles the Funds' claim that the Employer owed a total of $226,325.70 to the Funds for unpaid contributions and interest for the period from December 27, 1996 through March 19, 2003. (Pilecki Decl. Exh. O.)

43.     The Employer agreed to pay an initial $40,000.00 and then monthly installments of $5,000.00 until the delinquent contributions and monies owed to the Funds were paid in full. (Pilecki Decl. Exh. O.)

44.     The Employer paid $100,000 the minimum due pursuant to the March 20, 2003 Settlement. (Warbet Decl. Exh. Q, Pilecki Decl. Exh. P.)

45.     The Employer did not complete the payments due under the March 20, 2003 Settlement and still owes approximately $120,000.00 to the Funds for the period from January 1, 2001 through March 20, 2003. (Pilecki Decl. Exh. R, Warbet Decl. Exh. Q.)

46.    The Funds performed an audit of the Employer's books for the period from January 1, 1997 through March 19, 2004 and determined that the Employer owed the funds $329.968.05 in delinquent contributions. (Pilecki Decl. Exh. P.)

47.    The Employer objected to the Funds calculations that included employees who Miron deemed supervisors, independent workers, part timers, employees working during their trial periods or employees working for a short time, 1.5 months or less. (Pilecki Decl. Exh. Q.)

48.    The Funds sent a Revised Audit Letter with supporting exhibits dated July 25, 2005 to the Employer charging $199,268.31 for unpaid contributions for the period from January 1, 2001 through March 19, 2004. (Pilecki Decl. Exh. R.)

49.    In the supporting documents to the July 25, 2005 letter the Funds noted Miron's objections to the inclusion of certain employees while continuing to charge the Employer for contributions on their behalf. (Pilecki Decl. Exh. R.)

50.    The Employer still owes $120,218.34 in unpaid contributions under the March 20, 2003 Settlement and these unpaid contributions are subject to arbitration between the parties. (Warbet Decl. Exh. S.)

51.    Because the $120,218.34 in contributions are subject to the arbitration provision of the March 20, 2003 Settlement, the Funds reduced the amount due on the July 25, 2004 audit letter by $120,218.34. (Pilecki Decl. Exh. O, Warbet Decl. Exh. S.)

52.    Contributions due pursuant to the audit for the period from March 20, 2003 through March 19, 2004 total $79,049.96. (Warbet Decl. Exh. S.)

<u>The Employer Owes $427,545.00 For the Period From March 19, 2004 to June 30, 2007</u>

53. The Union acquired an employee list with employee signatures entitled "B&M Linen Corp Employee Contact List" dated February 19, 2007 for the pay period ending February 18, 2007. (Pilecki Decl. Exh. T, Miron Dep, p. 138, L. 6-13.)

54. Miron uses the printed lists for employees, including supervisors, to sign when they pick up their weekly pay check. (Miron Dep. p. 138, L. 25 - p. 141, L. 7, p. 142, L. 13 - 16.)

55. The Funds received the employee list from the Union in July 2007. (Pilecki Decl. Exhs. T, U.)

56. The February 2007 list contained the names of 115 employees. (Pilecki Decl. Exh. T, Miron Dep, p. 138, L. 14-24.)

57. The Employer reported to the Funds only 38 employees on payroll for the pay period ending February 18, 2007. (Pilecki Decl. Exh. J.)

58. The Funds sent a letter on August 9, 2007 with an invoice to the Employer dated August 6, 2007 charging unpaid contributions in the amount of $637,638.23 for the wages not reported to the Funds for the period from March 19, 2004 through and including June 30, 2007. (Pilecki Decl. Exh. U.)

59. Both Trust Agreements contain Article IV "Obligations of the Employer" which provides that an Employer is obligated to provide information regarding participating employees and their wages to the Trustees or the Fund Administrator, and make available for inspection and copying the Employer's payroll records. (Warbet Decl. Exhs. D, E.)

60. By letter dated October 1, 2007 the Funds sought to commence an audit on any weekday after October 8, 2007 and no later than October 19, 2007. The Employer had until October 5, 2007 at 5:00 p.m. to schedule an audit. (Pilecki Decl. Exh. V.)

61. The Funds and the Employer agreed to commence the audit on Tuesday, October 16, 2007 at the Employer's premises. (Pilecki Decl. Exh. W.)

62. The Employer did not have all documents available and the audit was postponed. The Funds and the Employer agreed to continue the audit on October 23, 2007 at 9:00 a.m. (Pilecki Decl. Exh. X.)

63. The Funds requested that Miron not contact the auditor directly regarding the format of the audit and requested that Miron not attempt to negotiate the terms of the audit with the Funds' staff. (Pilecki Decl. Exh. Y.)

64. The Audit was not completed. (Pilecki Decl. Exh. Y.)

65. In response to the Employer producing the NYS-45s during discovery in this matter, the Funds revised the calculations for unpaid contributions and interest due from the Employer for the period from March 19, 2004 through June 30, 2007. (Pilecki Decl. Exh. AA.)

66. The revised calculations included wages for all employees listed onthe the NYS-45s produced by the Employer who were not "supervisors", Miron Markus' chart containing hire and termination dates for certain employees, and the information from the Employer Receipts Report for the years 2005 and 2006. (Pilecki Decl. Exhs. K, L, M, N, Z, BB, CC.)

67. The Funds' revised calculations for the period from March 19, 2004 through June 30, 2007 include all employees listed on the NYS-45s who are part-time, working their trial period, or "independent." (Pilecki Decl. Exh. AA, Vonlep Dep. p. 30, L. 16- p.32, L. 21.)

68. The Fund's revised calculations also took into acount the contributions already paid by the Employer to the Funds and detailed in the Funds' Earnings Receipt Reports for 2005 and 2006. (Pilecki Decl. Exhs. AA, BB, CC.)

69. The Funds' Earnings Receipt Reports for the years 2005 and 2006 detail the contributions due to the fund based only on the wages reported to the Funds by the Employer. (Vonleh Dep. p.38, L. 8-12.)

70. The Employer did not report wages to the Funds for part-time employees, employees during their first three months of employment, "independent" employees and employees who did not want to be in the Union. (Miron Dep. p. 63, L. 15 - p.64, L. 2, p. 68, L.2 - 16, p. 83, L. 6 - 17, p. 152, L. 6-24, p. 154, L. 24 - p. 156, L. 4-16, p. 157, L. 20 - p. 158, L. 5, p. 161, L. 17 - p. 162, L.7, p. 164, L. 15 - p. 167, L. 2.)

71. Because the Employer did not provide NYS-45s or other payroll information to the Funds for the year 2004, the unpaid contributions that year are estimated based on the employee compliment reflected in the 2005 NYS-45s. (Pilecki Decl. Exh. AA, Vonleh Dep. p. 25, L. 17 - 25.)

72. The Funds revised total for unpaid contributions and interest due for the period from March 19, 2004 through June 30, 2007 is $427,545.03. (Pilecki Decl. Exh. AA.) The revised calculations do not include any employee that is labeled a "supervisor" on the NYS-45s. (Pilecki Decl. Exh. AA, Vonleh Dep. p.30, L.19 - p. 31, L.5.)


Dated: New York, New York
       March 20, 2008

                                        KENNEDY, JENNIK & MURRAY, P.C.


                                        _____
                                        By:   Elizabeth M. Pilecki (EP 5805)
                                              113 University Place
                                              New York, New York, 10003
                                              (212) 358-1500